607 So.2d 851 (1992)
Bobby JEFFERSON, Plaintiff-Appellee,
v.
MONUMENTAL GENERAL INSURANCE COMPANY, Defendant-Appellant.
No. 24057-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
Rehearing Denied November 25, 1992.
Writ Granted February 5, 1993.
McCoy & Hawthorne, Ltd. by Dee A. Hawthorne, Natchitoches, for defendant-appellant.
Bobby L. Culpepper, Jonesboro, for plaintiff-appellee.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
SEXTON, Judge.
The defendant, Monumental General Insurance Company, appeals a judgment following a bench trial in favor of plaintiff, Bobby Jefferson. That judgment awarded plaintiff $25,000 for the amputation of his foot, pursuant to the provisions of an insurance policy. We reverse.
The plaintiff was seriously injured in an automobile accident on August 5, 1988. Due to injuries received in that accident, a portion of plaintiff's left foot was surgically amputated. An insurance policy issued to plaintiff by Cumberland Life Insurance Company provided benefits in the amount of $25,000 for loss of a foot. Loss of a foot was defined in the policy as "physical separation at or above the ankle joint." The defendant is the successor to Cumberland Life Insurance Company and assumed the obligations due under the policy at issue.
The trial court initially rendered summary judgment for plaintiff. This court reversed and remanded, finding that a genuine issue of material fact existed as to the actual location of the amputation with respect to the ankle joint. Jefferson v. Monumental General Insurance Company, 577 So.2d 1184 (La.App.2d Cir.1991). After remand and following trial, the trial court again rendered judgment for plaintiff, finding that the amputation of the plaintiff's foot occurred at the ankle joint. Defendant seeks review of that judgment.
On the earlier appeal of this case, we set forth the law regarding interpretation of insurance policies as follows:
An insurance policy is a contract between the parties and the rules established for the construction of written agreements also apply to contracts of insurance. The intention of the parties is of paramount importance in interpreting insurance contracts. Their intention is to be determined in accordance with the plain, ordinary and popular sense of the *852 language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance contract should not be given an interpretation which would act to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Courts do not have authority to change or alter the terms of an insurance policy under the guise of interpretation when such terms are couched in clear and unambiguous language. It is well-settled that ambiguous clauses in policies of insurance are to be construed against the insurer and in favor of the insured. In order to be ambiguous an insurance contract must not be only susceptible of two or more interpretations but both interpretations must be equally reasonable.
Jefferson v. Monumental General Insurance Company, supra at 1187.
At the initial grant of summary judgment, the trial court, citing Webster's Dictionary, defined the word "at" as "a function word to indicate presence or occurrence in, on or near." The trial court found that the amputation was clearly near the ankle joint. The trial court's opinion following trial, although not as explicit in this regard, may clearly be read as again finding an amputation near the ankle joint sufficient to qualify as one at the ankle joint.
Courts should not strain to find an ambiguity in an insurance policy where none exists. Watts v. Aetna Casualty and Surety Company, 574 So.2d 364 (La.App. 1st Cir.1990); Ray v. Republic Vanguard Insurance Company, 503 So.2d 217 (La. App. 3rd Cir.1987). Further, an insurance contract is to be construed as a whole and one part thereof should not be construed separately at the expense of disregarding other provisions. Central Louisiana Electric Co., Inc. v. Westinghouse Electric Corporation, 579 So.2d 981 (La.1991); Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La.1988).
The trial court's isolated construction of the word "at" fails to consider the modifying effect of the rest of the clause. By combining the word "at" with the language "or above," the insurance contract clearly provides that the physical separation must occur either through or at a location superior to the ankle joint. The insurance policy is not ambiguous and, by its strict terms, any physical separation of the foot at a location below the ankle joint precludes recovery thereunder.
The question of whether the physical separation of plaintiff's foot occurred in a location at or above his ankle joint is a factual issue which should not be set aside on appeal unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
The trial court's reasons for judgment cite a letter dated October 12, 1989, in which Dr. John J. Ferrell, one of plaintiff's treating physicians, stated:
Mr. Jefferson did sustain traumatic amputation of the mid-foot area back to the tibial talar joint which is at the ankle joint. As far as the spirit of the claim, I would say Mr. Jefferson (should) be treated as if this foot was completely avulsed and be treated as a long below-knee amputation rather than a partial foot amputation.
Nevertheless, Dr. Ferrell's deposition testimony is clearly to the effect that the amputation occurred below the ankle joint. During his deposition testimony, Dr. Ferrell stated: "The amputation did not go through the ankle joint." Dr. Ferrell testified that the incision was initiated at the level of the ankle joint, but the amputation left the ankle joint intact. "It started at the level of the ankle joint, right here, and went throughwent through the mid-foothind-foot." Finally, Dr. Ferrell summed up his testimony, "The ankle joint was not taken off of the foot. The foot was taken off, period."
This opinion was joined by the only other expert testimony offered in this case. Dr. Dale C. Fazio, a podiatrist, testified at trial that the amputation occurred below the ankle joint. Dr. Fazio testified, "My opinion was that the amputation occurred below *853 the ankle joint and ... part of the foot was intact...." Dr. Fazio noted, "[Plaintiff] still has his hind foot or rear foot and it is the talus and the calcaneous." Dr. Fazio reiterated, "Yes, it is my opinion that there is no separation at the ankle joint."
The evidence presented at trial clearly shows that the amputation performed on plaintiff left his ankle joint intact. The ankle joint is the location at which the tibia and fibula bones (of the leg) meet the talus bone (of the foot). The Chopart amputation performed on plaintiff occurs at the talonavicular and calcanocuboid level, which is below the ankle joint. In effect, the amputation is a mid-foot amputation, leaving intact the talus and calcaneous, the bones of the heel of the foot, as can be seen from the diagram found in the first Jefferson v. Monumental General Insurance Company, supra at 1186.
We note that the trial court's reasons for judgment support the clear factual determination that the amputation occurred below plaintiff's ankle joint. The trial court noted: "The amputation has destroyed the effectiveness of the ankle joint as a joint. This is because, there is nothing, in the form of a foot left to be articulated by the joint." The clear import of this statement is that the trial court found that the plaintiff's ankle joint was left intact by the amputation, which obviously had to occur below the level of the ankle joint.
The insurance policy provided recovery for the complete loss of a foot, defined as a physical separation at or above the ankle joint. Here, plaintiff had only a partial, albeit significant, loss of the foot. The amputation clearly occurred below the ankle joint, which joint is still intact in plaintiff. The trial court judgment finding otherwise is manifestly erroneous and must accordingly be reversed.
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of defendant, dismissing plaintiff's demands at his cost.
REVERSED AND RENDERED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, LINDSAY, HIGHTOWER and VICTORY, JJ.
Rehearing denied.