CALOGERO, Chief Justice.*
We granted a Writ in this case to determine whether the plaintiff, Bobby Jefferson, is entitled to receive benefits for the amputation of his foot under an accident and dismemberment insurance policy which defines the loss of a foot as a “physical separation at or above the ankle joint.” For the following reasons we find that the physical separation of plaintiff’s foot occurred “at ... the ankle joint.” Therefore the injury was covered by the policy and plaintiff is entitled to the compensation provided, i.e., $25,000.
On August 6, 1988, plaintiff, Bobby Jefferson, was involved in an automobile accident which caused his severe injuries. He was treated initially at Jackson Parish Hospital in Jonesboro, Louisiana, and later transferred to Schumpert Medical Center in Shreveport. One of the injuries he suffered was a crushed left foot which required a Chopart amputation of the entire *272 foot at the level of the talus (ankle bone) and navicular bone and the calcaneus (heel bone) and cuboid bone.
At the time of the accident Jefferson had an accident and dismemberment policy with a principal sum of $50,000. According to the terms of the policy, Jefferson was to receive one-half of that principal sum ($25,-000) for “loss of one member.” [1] “Loss” was defined in the policy “with regard to foot, [as] physical separation at or above the ankle joint.” Jefferson filed a claim with defendant, Monumental General Insurance Company (hereinafter, Monumental), seeking compensation based on the loss of his foot at the ankle. Monumental denied the claim arguing that the amputation of the foot did not take place at or above the ankle joint.
Jefferson thereupon filed suit claiming that Monumental “arbitrarily and capriciously failed and refused to pay [the] claim.” Jefferson moved for and was granted a summary judgment by the 2nd Judicial District Court. The district judge found from Webster’s Dictionary, that the word “at” was "... a function word to indicate presence or occurrence in, on or near ...” The court reasoned that because the amputation was near the ankle joint, coverage existed under the policy. The Second Circuit Court of Appeal reversed plaintiff's favorable summary judgment and remanded the case to the trial court for full consideration of the facts and law. That court determined that a serious issue of material fact existed concerning the point at which the amputation actually occurred. Jefferson v. Monumental General Insurance Co., 577 So.2d 1184 (La. App. 2 Cir.1991).
On October 30, 1991, after a trial on the merits, the 2nd Judicial District Court once again rendered judgment in Jefferson’s favor against Monumental for $25,000. The district judge relied on the testimony of Jefferson’s treating physician and his own evaluation of Jefferson’s foot to arrive at his conclusion that Jefferson’s foot had been amputated at the ankle joint.[2]
Monumental appealed the judgment again. Jefferson v. Monumental General Insurance Co., 607 So.2d 851 (La.App. 2 Cir.1992). The court of appeal once more reversed the district court’s judgment, finding this time that the judgment was manifestly erroneous because “[t]he amputation clearly occurred below the ankle joint ...” Id. at 853. Moreover, the court noted that the insurance policy was not ambiguous, that “by its strict terms, any physical separation of the foot at a location below the ankle joint precludes recovery thereunder.” Id. at 852.
Jefferson then applied for this Writ of Certiorari which we granted in order to determine whether his injury was a covered loss within the terms of the policy. For on the following reasons, we find that the amputation of Jefferson’s foot occurred “at” the ankle joint. Therefore, the injury was covered by the policy and he is entitled to the compensation provided.
The Louisiana Civil Code provides the general rules for interpreting contracts and their provisions. According to C.C. art. 2047, “[t]he words of a contract or policy must be given their generally prevailing meaning”, and “[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter.” Moreover, according to C.C. art. 2049, “[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.”
The operative provision in question defines “loss ... with regard to foot, [as] *273 physical separation at or above the ankle joint.” However, the policy contains no definition or description as to what constitutes the ankle joint. Consequently, we must go beyond the four corners of the policy to establish the definition of an “ankle joint.”
The term “ankle joint” is not defined in the English dictionary. However, “ankle” and “joint” are individually defined. “Ankle”, according to Webster’s New Collegiate Dictionary is “the joint between the foot and the leg.” Webster’s defines “joint” as “the point of contact between elements of an animal skeleton with the parts that support and surround it.” Likewise, The Random House Dictionary of the English Language defines “ankle” as “the joint between the foot and the leg, in which movement occurs in two planes.” “Joint” is defined by the same dictionary as “the movable or fixed place or part where two bones or elements of a skeleton join.” Therefore, an extrapolated definition of “ankle joint” would seem to be the area of contact between the leg and the foot which includes the bones and elements that support and surround it, i.e., skin, bones, ligaments, muscles.
Although we have fashioned a definition of “ankle joint” based on individual definitions of “ankle” and “joint”, we note that the term is of a more technical nature, describing an anatomic location on the human body. Therefore, we are persuaded to refine our definition of “ankle joint” based on medical references.
According to Schmidt’s Attorneys’ Dictionary of Medicine,[3] the ankle joint is a
... hinge joint between the lower end of the leg and the foot. The bones entering into the formation of the joint are the tibia (the inner of the two leg bones), the fibula (the outer of the two leg bones), and the talus (the highest of the
bones in the back of the foot) ... The chief ligaments holding the bones together are the deltoid, talofibular, and calcaneofibular ... (Emphasis added.)
The ankle joint is also defined in Legal Anatomy and Surgery,[4] which states:
The Ankle Joint — The ankle is a perfect hinge joint, made up of the lower end and internal malleolus of the tibia, the external malleolus of the fibula, and the upper and lateral surfaces of the astragalus (heel bone) ... The ankle joint is a very powerful articulation, bound together by unyielding ligaments and many tendons ... Four important ligaments bind the ankle joint together: the anterior, posterior, internal lateral, and external lateral ... (Emphasis added.)
The Textbook of Human Anatomy[5] describes the ankle joint as:
... a synovial hinge joint formed by the articulation of the talus with a three-sided socket formed by the distal surface of the tibia and the articular surfaces of the tibia and fibular malleoli together with the inferior transverse tibiofibular ligament ...
The capsule is thin anteriorly and pos-teriorly, but is thickened laterally to form the lateral ligament and medially to form the medial, or deltoid ligaments
[[Image here]]
The integrity of the joint depends partly on the shape of the lower ends of the tibia and fibula, and partly on the strong deltoid and lateral ligaments. The deltoid ligament is a thick triangular ligament which connects the medial mal-leolus of the tibia to several tarsal bones [6]
[[Image here]]
The lateral ligament of the ankle joint consists of three separate cords ...[7] (Emphasis added.)
*274 Finally, Gray’s Anatomy[8] details the ankle joint. It states:
IV. Talocrural Articulation or Ankle Joint (Articulatio Talocruralis; Ti-biotarsal Articulation)
The ankle joint is a ginglymus, or hinge joint. The structures entering into its formation are the distal end of the tibia and its malleolus, the malleo-lus of the fibula, and the inferior transverse ligament which together form a mortise for the reception of the ... surface of the talus and its medial and lateral facets. The bones are connected by the following ligaments: Anterior Capsule, Deltoid, Anterior Talofibular, Posterior Talofibular, Calcaneofibu-lar.[9]
(Emphasis added.)
Thus, it is apparent from the definitions and descriptions above that the ankle joint is a complex entity which consists of the tibia, fibula, and talus along with the ligaments that connect these three bones together and the ligaments that connect these three bones with bones of the foot, namely, the calcaneus and the navicular.
The amputation of plaintiffs foot occurred at the junction of the talus with the navicular bone and the calcaneus with the cuboid bone. In order for the surgeon to disarticulate the navicular bone from the talus, the incision, of necessity, had to extend through and sever the tibionavicular ligament (the ligament which connects the tibia and navicular bone) of the deltoid ligament. The deltoid ligament is an integral part of the ankle joint. Therefore, the amputation, because it involved ligaments that make up the ankle joint, occurred at the ankle joint.
Our determination that the amputation occurred at the ankle joint is supported by the testimony of Dr. John Ferrell, who participated in the amputation of plaintiffs foot. According to Dr. Ferrell, “the incision was at the level of the ankle” and the foot was taken off “at the level of the ankle joint.” Furthermore, in a letter written by Dr. Ferrell on October 12, 1989 to plaintiffs attorney, Dr. Ferrell stated that “Mr. Jefferson did sustain a traumatic amputation of the mid foot area back to the tibial talar joint which is at the ankle joint.”
Finally, the word “at” in the operative provision is at the least ambiguous. “The words used in ... a contract are to be understood in the common and usual signification, without attending so much to grammatical rules as to general and popular use.” Harmon v. Lumbermens Mutual Casualty Co., 247 La. 263, 170 So.2d 646 (1965). We agree with the district court that the general and popular use of the word “at” may mean “in, on, or near.” In that vein, we note that the policy does not give the word “at” to a different definition. Thus, “at ... the ankle joint” may reasonably mean “ ‘in, on, or near’ ... the ankle joint.”
According to Credeur v. Luke, 368 So.2d 1030 (La.1979):
*275 The established rule is that any doubt or ambiguity as to the meaning of a provision in an insurance policy must be construed liberally in favor of the insured against the insurer. When the ambiguity relates to a provision which limits liability under the policy, the law requires that the contract be interpreted liberally in favor of coverage. (Emphasis added.)
Id. at 1032, citing Craft v. Trahan, 351 So.2d 277 (La.App. 3 Cir.1977). Following this principle and recognizing that the word “at” may mean “in, on, or near”, we determine that in order to interpret the provision in favor of coverage, the amputation of plaintiffs foot occurred “at”, that is, near, the ankle joint. As a result, plaintiffs injury was covered by the policy and he is entitled to compensation for loss of his foot.
DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and that of the district court is reinstated.
COURT OF APPEAL JUDGMENT REVERSED; TRIAL COURT JUDGMENT REINSTATED
LEMMON, J., dissents and assigns reasons.

 Marcus, J. not on panel. For a the procedure employed in assigning cases after January 1, 1993, to rotating panels of seven justices, see State v. Barras, 615 So.2d 285 (La.1993).

. A member, under the policy, included a hand, foot, or an eye.

. In his reasons for judgment the district judge noted that Dr. Ferrell wrote in a letter that Jefferson should "be treated as if this foot was completely avulsed and be treated as a long below-knee amputation rather than a partial foot amputation." In addition, the trial judge found Dr. Ferrell’s testimony to be more convincing than Monumental’s expert witness. More importantly, the district judge viewed the foot himself and determined that the foot was gone and Jefferson was left with a stump. The judge concluded that the "amputation [had] destroyed the effectiveness of the ankle joint as a joint ... because, there is nothing, in the form of a foot left to be articulated by the joint."

. Schmidt, J.E., Schmidt’s Attorneys' Dictionary of Medicine, Vol. l at A-230 (1985).

. Malloy, B.S., Legal Anatomy and Surgery, Second Edition at 306 (1955).

. Hamilton, W.J., Textbook of Human Anatomy at 245-247 (1956).

. The deltoid ligament connects the medial mal-leolus of the tibia to the talus, calcaneus, and the navicular bone of the foot.

. The lateral ligament connects the lateral mal-leolus to the talus and the calcaneus.

. Gray, H., Gray's Anatomy at 356 (1973).

. According to Gray’s-.
The Articular Capsule surrounds the joint, and is attached to the borders of the articular surfaces of the tibia and malleoli proximally, and to the talus around its articular surface distally...
The Deltoid Ligament is a strong, flat, triangular band, attached to the apex and anterior and posterior borders of the medial malleolus proximally. It consists of two sets of fibers, superficial and deep. Of the superficial fibers the most anterior (tibionavicular) are inserted into the tuberosity of the navicular bone ...; the middle (calcaneotibial) descend almost perpendicularly to be inserted into the whole length of the sustentaculum tali of the calca-neus; the posterior fibers (posterior talotibial) pass lateralward to be attached to the inner side of the talus, ... The deep fibers (anterior talotibial) are attached to the tip of the medial malleolus, and to the medial surface of the talus.
The Anterior Talofibular Ligament ... passes anteriorly and medially from the anterior margin of the fibular malleolus to the talus ...
The Posterior Talofibular Ligament ... runs ... from the ... fibular malleolus to a prominent tubercle on the posterior surface of the talus ...
The Calcaneofibular Ligament ... [runs] from the apex of the fibular malleolus to a tubercle on the lateral surface of the calca-neus ... (Emphasis added.)