633 So.2d 857 (1994)
Darren M. WALLACE
v.
WEAVERS UNDERWRITING AGENCY, et al.
No. 93-CA-1618.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1994.
*858 Eavelyn T. Brooks, Bastian & Wynne, New Orleans, for appellants.
Frank M. Buck, Jr., Robert L. Manard, III, Law Offices of Robert L. Manard, New Orleans, for appellee.
Before CIACCIO, ARMSTRONG and JONES, JJ.
CIACCIO, Judge.
Defendants, National Union Fire Insurance Company and American Home Assurance Company, appeal from a judgment of the trial court granting declaratory and summary judgment in favor of plaintiff, Darren M. Wallace. We affirm.

Facts
On February 2, 1989, plaintiff, Darren Wallace, was in the course and scope of his employment with Browning-Ferris, Industries ("BFI") as a laborer working on one of BFI's garbage trucks. On that date, an uninsured driver ran into the back of the garbage truck, injuring plaintiff.
Subsequent to this accident, BFI obtained an automobile liability insurance policy from National Union which provided coverage to the truck on which plaintiff was injured. The policy had an effective period from May 1, 1990 through May 1, 1991 with "claims made" coverage retroactive to any occurrences after October 1, 1986 for which a claim was made during the effective policy period.
A binder was issued on April 30, 1990 by a broker on behalf of National Union providing limits of liability of $12,500,000.00in excess of a $2,500,000.00 self-insured retention of BFI. However, the policy which was subsequently received by BFI on July 13, 1990 included a self-insured retention amount of $10,000.00, rather than the $2,500,000.00 stated in the binder. Notice of error in the policy was given to BFI by the broker by correspondence dated July 19, 1990. The BFI representative confirmed this error in the amount of the self-insured retention in correspondence to the broker dated August 7, 1990.
On December 18, 1990, BFI received an endorsement issued by National Union charging the self-insured retention of BFI to $2,500,000.00, rather than the $10,000.00 amount listed in the original policy.
Plaintiff's lawsuit for injuries sustained in this accident was filed on January 29, 1990, claiming uninsured motorists damages from several insurers. The petition was served on BFI on November 27, 1990.
On May 19, 1993, plaintiff filed a Motion for Declaratory Judgment and/or Summary Judgment on Insurance Coverage seeking a judgment declaring the following:

*859 1) that the policy provides uninsured motorists coverage;
2) that the plaintiff's claim was "made" under the policy on November 26, 1990;
3) that on that date the self insured retention amount under the policy was $10,000; and
4) that National Union's policy provides coverage for plaintiff's claim in excess of $10,000.
National Union filed an opposition to this motion and a Cross-Motion for Declaratory and/or Summary Judgment on Insurance Coverage seeking a declaration BFI's self-insured retention was $2,500,000 during the life of the policy and that since plaintiff's damages do not exceed this amount defendants are entitled to a judgment dismissing plaintiff's claims against them.
The trial court, in its reasons for judgment, stated:
The Court is compelled to deny the motions filed by National and grant plaintiff's motion for declaratory and/or summary judgment to reflect coverage by National of plaintiff's U.M. claim for all amounts in excess of $10,000.00. Not only was the policy in force at the time of the claim, it had been in force for months prior to and after the claim, and was only two months short of a one year expiration.
National argues that plaintiff is not prejudiced since he is not a party to the contract and his rights do not change whether or not BFI has insurance with National. It is suspect that the "error" was not discovered until after a claim for excess was made, but even assuming legitimacy, as this court should, the possibility of fraud, collusion and the exposure to prolonged litigation should deem it against public policy to change the terms of a policy such as this to exclude coverage to a plaintiff who was legitimately insured for months prior to the discovery of a previous "intention" between parties not to afford coverage. It should be noted that this "intention" was announced after BFI was concluded to be individually free of U.M. liability.
The requested conclusion by defendant, National, would encourage laxity and indifference to the written terms of a policy, which the parties could change by announcing a prior intention.
On appeal, defendants argue that the trial court erred in finding the National Union policy provided uninsured motorists (UM) coverage and in finding the policy provided coverage for all amounts in excess of $10,000.00.

Uninsured Motorist Coverage
Defendants first contend that the terms of the National Union policy specifically exclude uninsured motorists coverage. Secondly, defendants argue that as an excess policy, the National Union policy is not subject to Louisiana law requiring all motor vehicle policies to provide uninsured motorists coverage.
LSA-R.S. 22:1406 D(1)(a) provides that:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be ... issued .. unless coverage is provided... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or select lower limits ..."
The policy issued by National Union contains an exclusion stating that the policy does not apply.
3. to any obligation for which the Insured may be liable under `no fault' or `uninsured motorists' or `underinsured motorists' law;
Defendants contend that this exclusion constitutes sufficient waiver of UM coverage. We disagree.
In Southern Am. Ins. v. Dobson, 441 So.2d 1185, 1192 (La.1983), the Supreme Court, on rehearing, held that excess policies which cover "liability arising out of the ownership, maintenance, or use of any motor vehicle" are automobile liability policies for purposes of LSA-R.S. 22:1406 D(1)(a). As such, they *860 must offer uninsured motorist coverage to an insured or obtain from the insured who declines such coverage a written waiver of such coverage.
In the present case, although the subject policy covers liability arising out of the ownership of BFI's motor vehicles, there is no written waiver of uninsured motorist coverage by the insured contained in the record. Although the policy contains an exclusion of such coverage, this does not amount to the written waiver by the insured required by our jurisprudence.
There is no dispute in the present case that the policy provides liability insurance for the vehicle involved in this accident. In the absence of a formal valid rejection of uninsured motorist coverage, the policy provides that coverage as well. 625 So.2d 1019 (La. 1993); Southern Am. Ins. v. Dobson, supra. Although defendants argue that the Dobson case was overruled by the amendment of LSA-R.S. 22:1406 to provide that UM coverage is not required of vehicles not listed in the policy, we find no merit in this argument. The policy clearly provides coverage for BFI's garbage trucks, and absent a written waiver, UM coverage is required.
In addition, although defendants argue that LSA-R.S. 22:1406 (D)(3) was added by the legislature in 1991 to provide that a party with self-insured status is not required to provide UM coverage, this provision is not applicable to the instant policy which was issued prior to the amendment.
Accordingly, we find no merit in defendants' argument that the National Union policy does not provide uninsured motorist coverage for plaintiff's claim.

The Amount of Self-Insured Retention
At the time the insured received notice of plaintiff's claim, the National Union policy stated it provided coverage to $12,500,000.00 over a self-insured retention of $10,000.00. The endorsement correcting the alleged error in the policy was not corrected until several weeks after the insured received notice of the claim.
Defendants argue that the policy as originally written contained a typographical or "scrivener's" error, and that the parties actually intended the self-insured retention to be $2,500,000.00 rather than $10,000.00. Defendants introduced the affidavit of an agent for the insurance broker which stated that the parties negotiated a $2,500,000.00 self-insured retention and the premium charged reflected that limited risk.
However, the record indicates the policy was issued on July 9, 1990 with a self-insured retention of $10,000. There is correspondence in the record whereby the broker notifies BFI of the error in the policy with respect to the self-insured retention, and BFI confirms this error.
Plaintiff's petition was served on BFI on November 27, 1990. The endorsement was not received by BFI until December 18, 1990. The insurer had knowledge prior to this time that the policy was allegedly incorrect but did not issue the endorsement for several months after issuance of the original policy and almost one month after the claim was made.
The policy provisions in effect on the date of a claim and prior to the execution of any amendments govern the coverage afforded. Strong v. Security General Life Insurance Co., 362 So.2d 1177 (La.App. 3rd Cir. 1978). At the time this claim was brought against the insured, the policy provided for a $10,000.00 self-insured retention.
By the express provisions of the policy, its terms may not be modified except in writing. The endorsement which was issued after plaintiff's claim was filed therefore has no effect on the terms of the policy with respect to this claim.
We find no error of the trial court in granting summary and declaratory judgment based on the express policy language. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.