I,STEVEN R. PLOTKIN, Judge.
The primary issue for this Court is the resolution of insurance clauses that determine which insurance company is the primary or excess insurer, the dates of coverage and laches.

STATEMENT OF THE CASE:

On December 16, 1993, Garold Sherlock (“Sherlock”) brought suit against his employers, Ocean Salvage Corporation (“Ocean”) and Cross Offshore Corporation (“Cross”), and one of its insurers, North American Specialty Insurance Company (“NAS”), for damages under maritime law for an injury that occurred on August 11, 1993. On February 7, 1994, NAS filed a third party demand against Certain Underwriters at Lloyd’s, London (“Lloyd’s”), Institute of London Underwriters (“Institute”), and Fireman’s Fund, alleging that these insurers had coexisting and concurrent insurance coverage of Ocean and Cross at the time of plaintiffs injury. In its third party demand, NAS claimed that it was entitled to judgment over, or contribution from, Lloyd’s, Institute and Fireman’s Fund.
laOn August 19, 1996, Lloyd’s filed a Motion for Summary Judgment, alleging that its policy did not come into effect until August 24, 1993, thirteen days after the injury to Sherlock. NAS replied with evidence that the Lloyd’s policy was in effect on August 1, 1993. The trial court denied Lloyd’s motion.
On September 30, 1996, NAS filed a Motion to Sever, Continue and for Amendment of the Third Party Demand, wherein NAS stated that the litigation with the original plaintiff, Sherlock, had been settled. NAS further stated that a policy issued by Louisiana Workers’ Compensation Corporation (“LWCC”), that was in force at the time of Sherlock’s accident, provided Ocean Salvage and Cross with $25,000.00 in coverage. On October 2, 1996, the trial court severed the Third Party Demand from the original suit and granted NAS leave to amend the demand to add LWCC as a defendant.
On October 2, 1996, the trial court entered a consent judgment, whereby judgment was entered in favor of Sherlock and against defendants (Ocean, Cross and NAS), “jointly, severally, and in solido,” for the sum of $300,000, to be paid within sixty days of the judgment.
On April 21, 1997, the claim against Fireman’s Fund was dismissed on a mo *935 tion for summary judgment. The remaining parties to the third party' demand (Lloyd’s, Institute and LWCC) agreed to a trial by briefs. Briefing was completed on February 19,1999.
In its July 30, 1999 judgment, the trial court found in favor of Lloyd’s, Institute and LWCC, and dismissed NAS’ claims with prejudice.
lain its Reasons for Judgment, the trial court found that:
1. NAS policy # 17004MA0024 6[sic] is a primary insurance coverage policy responsive to $250,000.00/$25,000.00 coverage for the accident or claim by the employees of NAS’ insured for the period January 30, 1993 to August 24, 1993. NAS and no other party ever questioned this time period of coverage.
2. Lloyds/Institute [sic] policies, # MT011650M, $75,000.00 /$25,000.00 excess and #MA011670M, $900,000.00 /100,000.00 excess provided for $250,000.00 primary coverage by NAS for the period July 30, 1993 to August 24, 1993 to avoid duplicate coverage involving the NAS policy because NAS was not able or not permitted by Chevron Oil Company, a co-insured, from canceling or changing its insurance and policy coverage before August 24, 1993.
* * * *
3. Ocean/Cross and NAS first notified Lloyd’s/Institute of the claim of employee, Sherlock, in February, 1994 when NAS filed its third party claim against Lloyd’s/Institute.
4. Lloyd’s/Institute is excluded from providing any primary insurance coverage for the period, July 30, 1993 to August 24, 1994 and further, is excluded from providing any defense obligations. The Lloyds/Institute [sic] policies were required to respond only for the period July 30, 1993 to August 24, 1994 and only after the primary limits provided by the NAS policy then in effect have been exhausted .... Accordingly, NAS does not have a claim for further contributions from Lloyd’s/Institute. See St. Paul Mercury Ins. Co. v. Lexington Ins. Co., 888 F.Supp. 1372 (S.D.Tex.1995) and also Wyatt v. Martech U.S.A., 1995 WL 562336 (E.D.La.).
Finally, the trial court found that “LWCC has been highly prejudiced by the extreme delay of the notice of the claim and the lawsuit and in the filing of the third party complaint against LWCC by NAS.”
On appeal, NAS contends that the trial court erred by: (1) holding that all parties to the December 3, 1996 settlement, agreed that NAS was the primary insurer of Ocean/Cross and that Lloyd’s/Institute was their excess insurer; (2) finding Lloyd’s/Institute policies provided excess coverage during the period of July 30,1993 to August 24, 1994; (3) finding that Lloyd’s/Institute were required to provide coverage from July 30, 1993 to August 24, 1994, and were excluded |4froin providing primary insurance coverage during the same time period; (4) finding that LWCC was not aware of Sherlock’s claim until October 2, 1996; (5) finding that LWCC was prejudiced due to the delay in receiving notice of the lawsuit; and, (6) finding that NAS first notified Lloyd’s/Institute of Garold Sherlock’s accident in February 1994.

DISCUSSION

ASSIGNMENT NO. ONE:

December 3,1996 Settlement:

NAS argues that the trial court erred in holding that all parties to the December 3, 1996 settlement agreed that NAS was the primary insurer of Ocean/ Cross and that Lloyd’s/Institute was their *936 excess insurer. Specifically, NAS argues that the Lloyd’s/Institute policies were concurrent to the policies provided by NAS and that the low premiums for the NAS policy, in comparison to the Lloyd’s/Institute policy premium, is explained by the smaller deductible of the NAS policy, as well as market competition. NAS relies on Penton v. Hotho, 601 So.2d 762 (La.App. 1 Cir.1992), for the proposition that an “excess clause” within the provisions of an insurance policy does not automatically transform a primary policy into an excess policy.
Lloyd’s/Institute contends that the maritime employers liability policies it provided to Cross were true excess policies, which incur no liability until the limits of the primary insurance, provided by NAS, had been reached. Lloyd’s/Institute | ¡¡states that it provided Cross with two policies offering two layers of excess coverage.[1] Lloyd’s points out that the first layer excess policy clearly states that “[t]he risk, interest, location and sum insured hereunder” is “EXCESS MARITIME EMPLOYERS LIABILITY.” Lloyd’s/Institute argues that its status as excess insurer is further evidenced by the settlement agreement, whereby Lloyd’s only contributed to the settlement after NAS’ policy limits were exhausted. Nowhere in the settlement agreement or consent judgment is there any reservation by NAS of claims against the third party defendants.
In its Reasons for Judgment, dated June 28, 1999, the trial court found that the original plaintiff, Sherlock agreed to settle his claim for $300,000. NAS contributed $106,787.40 and Lloyd’s contributed $193,215.60 towards this amount. The court further found that:
Statement of Uncontested Fact No. 10 says that NAS expended an additional $157,040.40 in maintenance and cure and in defense of the claim. It is apparent to this Court that Lloyd’s contribution was agreed to by NAS and Lloyd’s, with the understanding that the NAS policy was a primary insurance policy with limits of $250,000.00 (Statement of Uncontested Facts No. 15). Therefore, at the time of the settlement NAS agreed to contribute, as it did, the full $250,000.00 primary policy limits in the following amounts: $106,787 .40 to Sherlock as NAS’s contribution toward the $300,000.00 settlement figure and $143,212.60 for maintenance and cure and in defense of the claim that NAS had expended up to the time of the agreement on December 3, 1996, making a total contribution by NAS of $250,000.00 (Statement of Facts # 10). These contribution amounts must have been dictated and agreed to at the time of the December 3, 1996 Settlement by NAS as primary insurer of Ocean/Cross, otherwise, NAS would have then demanded that Lloyd’s was the primary insurer and excess insurer and that Lloyd’s/Institute pay the entire claim of $457,043.40, as it now ^claims, less the $25,000.00 it alleges LWCC owes. No other understanding would have resulted in Lloyd’s consenting to pay the exact amount of $193,215.60 as excess insurer.
In contracts of insurance the primary policy is that policy which ranks ahead of any excess policy, i.e., its proceeds need be exhausted prior to any payment being made from excess or umbrella policies. Gentry v. Meade, 99-1030, p. 14 (La.App. 4 Cir. 4/19/00), 767 So.2d 60, 63, *937 unit denied, 2000-1969 (La.10/6/00), 771 So.2d 85.
In resolving conflicting “other insurance” clauses it is important to distinguish between policies that are true excess policies and those that are actually primary policies with “excess” other insurance clauses. A true excess policy is one that provides that the insurer is liable only for the excess above and beyond that which may be collected from the primary insurer. It is customary in such policies to include a requirement for underlying primary insurance for a certain amount and to list such other primary insurance within the excess policy. On the other hand an “excess” other insurance clause within a primary policy is considered a self-serving provision that attempts to make the insurer only secondarily liable if another unex-hausted policy is available to cover claims. See 12A Couch on Insurance § 45:628 (M. Rhodes 2d ed. 1981).
Penton v. Hotho, 601 So.2d 762, 764-65, n. 3 (La.App. 1 Cir.1992).
Here, Lloyd’s policy number MT011650M, under the heading “EXCESS EMPLOYERS’ LIABILITY,” states that “[l]iability shall attach to the Underwriters only after Primary Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability.” The policy then states that, under maritime coverage, Lloyd’s becomes liable after the primary insurer pays $25,000 ultimate net loss per person or $25,000 ultimate net loss per accident. Under the policy, Lloyd’s is liable to pay beyond the primary insurer’s | coverage up to $1,000,000 ultimate net loss per person, or $1,000,000 ultimate net loss per accident.
Institute’s policy number MA011670M provides that the “EXCESS EMPLOYER’S LIABILITY” maritime coverage shall attach after the primary insurer pays $900,000 ultimate net loss per person, or $900,000 ultimate net loss per accident. Institute will then be liable for additional amounts up to $1,000,000 ultimate net loss per person/per accident.
Both policies contain the following identical clause:
Liability to pay under this policy shall not attach unless and until the Primary Insurers shall have admitted liability for the Primary Limit or Limits or unless and until the Employer has by final judgment been adjudged to pay an amount which exceeds such Primary Limit or Limits and then only after the Primary Insurers have paid or have been held liable to pay the full amount of the Primary Limit or Limits.
The policies, on their face, are true excess policies. Lloyd’s/Institute is not liable for coverage until and unless NAS, as the primary insurer, pays the limits- stated in the excess policy. Any other language in the policies that may imply otherwise, is insufficient and fails to transform the policies into primary or concurrent insurance.
Accordingly, we find that the trial court did not err in finding that Lloyd’s/Institute was the excess insurer.
| ASSIGNMENT NOS. TWO & THREE:

Lloyd’s/Institute Policies:

In its second and third assignments of error, NAS contends that the trial court erred in finding Lloyd’s/Institute policies provided excess coverage during the period of July 30, 1993 to August 24, 1994. NAS additionally argues that the trial court erred in finding that Lloyd’s/Institute was excluded from providing primary insurance coverage during the same time period.
Lloyd’s/Institute asserts that at NAS’ insistence, the Cross insurance policy underwritten by NAS was canceled, effective *938 August 24, 1993. Cross, wanting to avoid making an additional premium payment, sought to make the cancellation effective July 30, 1993. NAS agreed, provided that Cross 1) obtained Chevron’s waiver of the 30 day notice to cancellation requirement; and 2) obtained replacement coverage with another insurer. Lloyd’s/Institute argues that it provided Gross with a combination of two excess policies with an original effective date of July 30, 1993, that was later changed to August 24, 1993, when NAS decided not to alter its policy’s expiration date. On August 17, 1993, the first layer excess policy was reformed to provide coverage beginning on August 24, 1993, when the NAS policy expired. The second layer excess policy was also reformed on August 17, 1993, to become effective only after the NAS policy limits were exhausted.
13 This court, in Kolmaister v. Connecticut General Life Ins. Co., 370 So.2d 630 (La.App. 4 Cir.1979), writ ref'd, 373 So.2d 531 (La.1979), stated that under the following circumstances reformation of an insurance policy is permissible:
An insurance policy may be reformed after proof that it does not express the actual contract intended by the parties due to mutual error or mistake. M.F.A. Life Insurance Company v. Huey, 347 So.2d 63 (LaApp. 2d Cir.1977). Reformation is also proper where the agent who issues the policy acts in a negligent, mistaken, or fraudulent manner. Hebert v. Breaux, 285 So.2d 829 (La.App. 1 Cir.1973).
370 So.2d at 632.
However, under Wallace v. Weavers Underwriting Agency, 93-1618 (La.App. 4 Cir. 2/25/94), 633 So.2d 857, writ denied, 94-0739 (La.5/13/94), 637 So.2d 1068, “[t]he policy provisions in effect on the date of the claim and prior to the execution of any amendments govern the coverage afforded.” Id. at p. 6, 633 So.2d at 860.
In the present case, on or about August 11, 1993, Sherlock allegedly suffered injuries from a work-related accident. At the time of the accident, the NAS policy was in effect as primary insurer, and would remain in effect until August 24, 1993. In a fax dated August 16, 1993, G & M Marine, Inc. (NAS’ managing general agent) informed Nigel Gladwell of Alexander & Alexander, Inc. (Lloyd’s/Institute’s domestic broker), that Sherlock was allegedly involved in an accident and had suffered a back injury. In that fax, G & M Marine, Inc. requested that Alexander & Alexander notify Lloyd’s, Institute and Fireman’s Fund of Sherlock’s claim. On August 17, 1993, Lloyd’s/Institute reformed its policies to change the effective date from July 30,1993 to August 24,1993.
hnThe record supports the trial court’s finding that Lloyd’s/Institute provided excess coverage between July 30, 1993 and August 24, 1993. Lloyd’s/Institute properly reformed the policies to rectify the mistake of the date of the NAS policy deadline to avoid duplication of coverage with NAS. Thus, NAS was the primary insurer on the date of the accident. Accordingly, there is no error in the trial court’s finding.

ASSIGNMENT NOS. FOUR & FIVE: Notice to LWCC:

NAS argues that the trial court erred in finding that LWCC was not aware of Sherlock’s claim until October 2, 1996, and in finding that LWCC was prejudiced due to the delay in receiving notice of the lawsuit. NAS asserts that the record does not support the trial court’s findings that there is nothing in the record that indicates LWCC did not conduct claims audits or review claims reports, that would have made it aware of the instant claim. Additionally, LWCC failed to present evidence that it was prejudiced by receiving notice *939 of the litigation when NAS filed its Third Party Demand, approximately three years after plaintiffs accident. Furthermore, LWCC took no action for two and one half years after it received the Third Party Demand.
LWCC asserts and the Statement of Uncontested Facts establishes that it did not receive notice of Sherlock’s claim until it was served with NAS’ Amended Third Party Demand that was filed on October 2, 1996, the same day as the consent | ^judgment and the settlement agreement between Sherlock and the other insurers. LWCC argues that it cannot be bound' to the settlement agreement where it had no opportunity to defend the lawsuit. Additionally, LWCC calls into question Sherlock’s status as a seaman, and argues that it is not liable for any maintenance and cure payments to which Sherlock was not entitled. LWCC further argues that its policy does not apply to the case at hand because it contains an exclusion clause in the maritime coverage endorsement.
The record reflects that LWCC was prejudiced by the lack of opportunity to defend itself prior to the settlement agreement. Specifically, LWCC was not afforded an opportunity to determine Sherlock’s seaman status and other factual issues pri- or to the settlement, or to timely conduct discovery. Accordingly, we find no error in the trial court’s finding.

ASSIGNMENT NO. SIX:

Notice to Lloyd’s and Institute:

By its sixth assignment of error, NAS contends that the trial court erred in finding that NAS first notified Lloyd’s/Institute of Sherlock’s accident in February 1994. NAS argues that Lloyd’s/Institute received constructive notice of Sherlock’s claim on August 16, 1993, when NAS faxed notice of Sherlock’s injury to Alexander & Alexander, the agent who placed the Lloyd’s/Institute policies with Cross. NAS further argues that the record does not reveal that Lloyd’s/Institute didj^not know of the claim prior to February 1994, when NAS filed its Third Party Demand.
Lloyd’s/Institute does not respond to this assignment of error.
Based on the record before us, we find that Lloyd’s/Institute received constructive notice of Sherlock’s accident on August 16, 1993, when G & M Marine, Inc. sent notice to Lloyd’s/Institute’s broker, Alexander & Alexander. Lloyd’s/Institute does not dispute this fact, and we find no evidence to the contrary. Accordingly, we find that the trial court erred in finding that NAS first notified Lloyd’s/Institute of Sherlock’s claim in February 1994, when it filed its Third Party Demand. However, this harmless error does not affect the final judgment of the trial court or the issues before this Court because the trial court correctly found that Lloyd’s/Institute’s policies were excess and not primary during the applicable period.

CONCLUSION:

For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED

. Lloyd's/Institute states that Policy No. MTOl 1650M is the first layer of excess coverage, with limits of $75,000 excess of $25,000; Policy No. MAO11670M is the second layer of excess coverage, with limits of $900,000 excess of $100,000 and Policy No. MT011710M is the umbrella coverage.