[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12923
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cv-61706-WCT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRENDA CARTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 2, 2013)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Brenda Carter, proceeding *pro se*, appeals a magistrate judge's grant of

summary judgment in favor of the government in its civil action to recover on Carter's defaulted student loan, 28 U.S.C. § 1345.[1]  For the reasons set forth below, we affirm in part and vacate in part the magistrate's summary judgment and remand to the district court for further proceedings consistent with this opinion.

## I.

The government filed a complaint against Carter regarding her student loan that was, allegedly, in default, and sought a judgment for the amount owed on the loan.  Following a period of discovery, the government moved for summary judgment and argued that it had established a *prima facie* case of debt owed on a promissory note.

In support of its motion, the government filed a Certificate of Indebtedness in which a loan analyst for the U.S. Department of Education certified that, as of July 21, 2009, Carter was indebted to the government in the amount of $110,461.98, $50,834.54 of which was principal.  The loan analyst further certified that the loan had a 9 percent interest rate, and thus, interest accrued on the principal at the rate of $12.53 per day.  Carter had obtained the loan from Sallie Mae in 1990, and the loan obligation was guaranteed by a private lender and

---

[1]  The parties consented to a magistrate judge hearing the case, pursuant to 28 U.S.C. § 636(c).

reinsured by the U.S. Department of Education under loan guaranty programs. Carter defaulted on her obligation in 1993, and, eventually, the loan was assigned to the Department. Since the assignment, the Department had credited a total of $15,205 in payments to the loan balance. The government also filed a copy of the promissory note at issue, which showed that Carter had signed the note. However, most of the terms of the note were illegible. The government also filed an "Itemization of Payments," which the government asserted set forth the payments that Carter had made toward the balance on the loan, as well as the interest that had accrued on the loan.

Carter responded to the government's summary judgment motion and argued that the government had failed to produce an original, legible document that showed the terms of the loan. Further, the amount of accrued interest on the loan that the government sought to recover was inconsistent with the accrued interest set forth in the government's Itemization of Payments, and thus, the government had overcharged her in interest. The government had also failed to credit her the full amount she had paid toward the balance on the loan. She cited her "Payments to Sallie Mae Chart," which was attached to her response. The chart purported to set forth various amounts that she had paid to Sallie Mae from 2006 to 2009, but Carter did not swear to the accuracy of the chart's contents.

3

In reply, the government filed two largely illegible copies of the promissory note at issue, as well as several other documents related to Carter's loan. One of these documents was an amended Itemization of Payments that stated that the interest on Carter's loan was $12,236.99, as of August 15, 1996, rather than 0, as set forth in the original itemization. The amended Itemization of Payments further provided that, as of September 20, 2007, Carter owed $47,799.72 in interest on the loan.

On August 17, 2011, Carter filed a motion to strike the government's reply to her summary judgment response because it had contained new arguments and evidence, or in the alternative, a motion to defer ruling on summary judgment until the government responded to her discovery requests, pursuant to Fed.R.Civ.P. 56(d). Specifically, she requested time for further discovery in order to obtain documents regarding the assignment of the promissory note, the calculation of the debt, and the person performing the debt analysis.

The government also filed the affidavit of the government's attorney, who attested that she sought an award of attorney's fees for the work she had completed on the case. Carter responded that the government's affidavit for attorney's fees violated multiple provisions of the district court's local rules. The government conceded that the court's local rules provided that an affidavit of

4

attorney's fees should not be filed until after entry of judgment. Thus, the government withdrew its request for attorney's fees.

On November 7, 2011, the magistrate determined that the government had established a *prima facie* case of debt owed on a promissory note. Thus, the burden shifted to Carter to establish that the amount was not due and owing. However, all of Carter's arguments were without merit. First, the magistrate determined that a new copy of the note clearly set forth the interest rates, the outstanding balance, Carter's promise to pay, and her signature. Further, the Addendum to the note, signed by Carter, correctly listed the principal amount of the loan, and the existence of the debt owed and promise to pay that debt could be inferred from Carter's partial payments. The magistrate rejected Carter's argument that she was being over-charged in interest, in light of the government's filing of the amended Itemization of Payments. The magistrate further rejected her assertion that the interest rate was never disclosed to her, in light of evidence in the record showing the nine percent interest rate. The amended Itemization of Payments credited Carter for $15,205 in payments she had made, and thus, she had failed to raise a triable issue of fact with respect to the issue of credits.

Carter filed a motion to reconsider the magistrate's judgment, reiterating her arguments in her response to the government's summary judgment motion, as well

5

as her arguments in her motion concerning the government's reply.  She attached an amended Payments to Sallie Mae Chart that set forth payments she had made to Sallie Mae from 2004 to 2009, and she certified under penalty of perjury that her chart was true and correct based on her examination of her bank statements.

The magistrate denied Carter's motion, noting that Carter had failed to file the amended Payments to Sallie Mae Chart before the magistrate granted summary judgment, and the amended chart was not supported by bank statements, credit card statements, canceled checks, or similar proof to illustrate that the payments were actually made to pay the account at issue.  The magistrate determined that there was no indication that the government raised any new issues in its reply or that Carter lacked discovery.  Despite the government's summary judgment motion being under consideration for months, Carter had not filed a sur-reply, but rather had relied solely upon the motion to strike the reply.

The final judgment ordered Carter to pay the government $50,834.54 in principal plus $67,599.42 in interest that had accrued through April 18, 2011. The magistrate also awarded $4,300 in attorney's fees to the government and stated that the award was pursuant to the terms of the promissory note executed by Carter.

II.

6

On appeal, Carter argues that the promissory note at issue is a negotiable instrument and is subject to Florida's commercial paper law, which requires the government, before it can recover on the note, to either produce the original note or provide an explanation for why the original could not be produced.  She notes that the existence of the loan itself is not in dispute.  Carter further asserts that the magistrate erred in discounting the evidence set forth in her Payments to Sallie Mae Chart and the amended chart.  The government incorrectly calculated the amount of accrued interest, as it had failed to account for a $3,000 overcharge in accrued interest.[2]

We review the district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party.  *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).  Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[2]  In her reply brief, Carter argues that the government failed to authenticate various documents submitted with its summary judgment motion, that the government failed to give her notice of the instant lawsuit, and that she had cured the 1993 default on the loan and had made timely payments ever since.  Because she raises these arguments for the first time in her reply brief, they are abandoned.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (providing that issues that a *pro se* appellant failed to raise in his initial brief were abandoned). We also reject Carter's arguments concerning errors in the government's original Itemization of Payments, as the government filed an amended Itemization of Payments, and the magistrate only relied on the amended document in his summary judgment order.

Fed.R.Civ.P. 56(a).  We may affirm the district court's judgment on any ground that finds support in the record.  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001).  The nonmovant must meet the movant's affidavits with opposing affidavits setting forth specific facts that show there is an issue for trial. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).  Conclusory allegations without specific supporting facts have no probative value.  *Id.*

To recover on a promissory note, the government must show (1) the defendant signed it, (2) the government is the present owner or holder, and (3) the note is in default.  *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (discussing whether summary judgment was properly granted in an action involving a defaulted student loan).

The government did not have to produce the original promissory note in order to recover on the note because, as held in persuasive authority, the note is not a negotiable instrument subject to Florida's commercial paper law.  *See Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.*, 168 F.3d 1362, 1364 (D.C. Cir. 1999) (noting that, although guaranteed student loans often change hands, they were not considered negotiable instruments, and assignees could not become holders in due course); *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913-14, n.6 (7th Cir. 1990) (providing that Federal Insured Student

8

Loans and Federal PLUS loans, which involved the government directly entering into a guaranty agreement with the lender, were not negotiable instruments); *see also United States v. Petroff-Kline*, 557 F.3d 285, 290-91 (6th Cir. 2009) (rejecting defendant's argument that the original promissory notes had to be produced, and noting that photocopies are allowed into evidence as if they were originals, pursuant to Fed.R.Evid. 1003). A promissory note encompassing a promise to repay a student loan that is guaranteed by the government is not freely negotiable, but rather it can only be assigned to eligible lenders. *See* 34 C.F.R. § 682.508(c) (providing that the Secretary's approval is required prior to the assignment of a note to an eligible lender). Further, under Florida law, an instrument is negotiable where it contains an unconditional promise to pay a certain sum on demand or at a definite time. Fla.Stat. § 673.1041(1). However, student loan contracts do not contain an unconditional promise or order to pay a certain sum in money because the loans are dischargeable in the event of death or disability. *See* 20 U.S.C. § 1087(a)(1). The time and amount of the eventual repayment obligation are not conclusively established at the time the student signs the promissory note due to numerous contingencies that are expressly allowed by operation of federal law. *See, e.g.*, 34 C.F.R. § 682.210 (authorizing deferments from repayment); 34 C.F.R. § 682.211 (providing that the secretary or the lender

9

may forbear from collecting the loan).

The 1991 Promissory Note Addendum, signed by Carter, demonstrates that the total principal amount of the loan was $41,065.03, and the addendum and her handwritten letter acknowledging the debt, all demonstrate her promise to pay the principal amount.  Further, although any interest rate on the loan that is set forth in the promissory note is illegible, the government submitted several documents setting forth the interest rate on the loan as nine percent, and Carter does not argue in her initial brief that there is a genuine dispute of material fact with respect to the interest rate.

In her reply brief, however, Carter does dispute the nine percent interest rate on the loan because, according to Carter, an August 1991 letter from Sallie Mae states that the interest rate was nine percent, but also states that the interest rate was eight percent for the first four years, and then variable thereafter.  Because she raised this argument for the first time in her reply brief, it is abandoned.  *See Timson*, 518 F.3d at 874.

Next, Carter had the burden of showing whether the government had properly credited her past payments.  *See United States v. Irby*, 517 F.2d 1042, 1043 (5th Cir. 1975) (providing that the government did not have the burden of showing that all appropriate credits on the promissory note had been made).

10

Carter did not swear to the accuracy of her original Payments to Sallie Mae Chart that she had attached to her response to the government's summary judgment motion. The chart did not indicate whether the amounts paid were related to the promissory note at issue. Further, Carter did not attach the actual bank statements from which she had allegedly obtained her payment information or any other evidence supporting her chart.[3]   Thus, Carter's Payments to Sallie Mae Chart contained conclusory allegations without specific supporting facts, such that it lacked probative value.

To the extent Carter asserts that the magistrate erred in denying her motion to reconsider his judgment in favor of the government, we reject her argument. Attached to Carter's Fed.R.Civ.P. 60(b) motion was an amended Payments to Sallie Mae Chart, which she had not previously filed. Carter swore to the accuracy of the amended chart. However, this evidence was not new, as required for Fed.R.Civ.P. 60(b) relief, because she has offered no reason as to why she was unable to file the amended information before the entry of summary judgment. *See Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1310 (11th Cir. 2003)

---

[3]  Carter cites to Fed.R.Evid. 1006, asserting that the rule expressly permits summaries of records. However, this rule may only be used to prove the contents of "voluminous" writings, and the party must make the original records available for examination or copying. Fed.R.Evid. 1006. Here, even assuming that the original bank statements that Carter used to create her Payments to Sallie Mae Chart constituted "voluminous" writings, Carter did not ever offer to file the original records or provide them to the government for examination.

11

(holding that plaintiffs had no right to Fed.R.Civ.P. 60(b)(2) relief where they were aware of the "newly discovered evidence" prior to the district court's entry of summary judgment). Further, the amended chart lacked supporting evidence, such as copies of the actual bank statements that Carter used to create the chart. In the lack of any evidence connecting her payments to Sallie Mae to the instant promissory note, she has failed to carry her burden and show that the government had failed to properly credit her past payments.

Carter also argues that the government overcharged her in interest. The final judgment provides that $67,599.42 in interest had accrued through April 18, 2011. The government's Certificate of Indebtedness provides that she owed $47,799.72 in interest on September 20, 2007. According to the Certificate of Indebtedness, interest accrued on the principal balance of $50,834.54 at the rate of $12.53 per day. Thus, between September 20, 2007, and April 18, 2011, which is 1,306 days, $16,364.18 in interest should have accrued during this period, for a total amount of interest of $64,163.90 ($16,364.18 plus $47,799.72), rather than the amount set forth in the final judgment. As the government has not indicated that interest was capitalized at any point during the period, there appears to be a discrepancy in the amount of interest due. Thus, we remand for further findings as to the amount of interest that has accrued.

12

III.

Carter argues that the magistrate erred in denying her motion to strike the government's reply because the government raised new arguments and filed new evidence in its reply. Further, she lacked an opportunity to rebut the new documents and arguments, as S.D.Fla. L.R. 7.1 prohibits briefs beyond a motion, response, and reply. Next, the magistrate abused his discretion in not allowing her additional discovery concerning (1) the assignment of the promissory note, (2) calculation of the debt the government claimed was owed, (3) information concerning the person performing the debt analysis, (4) explanations as to the documents attached for the first time to the reply brief, and (5) the discrepancy between the evidence showing that her loan had a nine percent interest rate and the evidence showing that the interest rate was eight percent for the first four years, and then variable thereafter.

*Carter's Motion to Strike the Government's Reply Memorandum*

We afford great deference to a district court's interpretation of its local rules and review a district court's application of local rules for an abuse of discretion. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009). To show an abuse of discretion, a party must show that the district court made a clear error of judgment. *Id.* Pursuant to S.D. Fla. L.R. 7.1, after a movant files a motion, a

13

movant may also serve a reply in support of its motion within seven days after service of the nonmovant's response.  S.D. Fla. L.R. 7.1(c). The reply is strictly limited to rebuttal of the matters raised in the nonmovant's response, and no additional memoranda shall be filed without leave of court.  *Id.*

Our review of the government's reply demonstrates that it did not violate S.D. Fla. L.R. 7.1(c), and thus, the magistrate did not abuse his discretion in denying her motion to strike the government's reply.  The government did, however, file new evidence that it had not previously filed before.  As the magistrate noted in denying Carter's motion to reconsider the judgment, Carter did not seek leave of court to file a sur-reply.  The local rules allow for additional memorandum beyond a reply to be filed with the leave of court.  *See* S.D. Fla. L.R. 7.1(c).  Thus, had Carter wished to respond to the government's reply, she could have sought the magistrate's leave to do so, but, as she did not, the magistrate was free to rely on the evidence the government attached to its reply.

*Carter's Fed.R.Civ.P. 56(d) Motion*

We review a district court's denial of a Fed.R.Civ.P. 56(d), motion for an abuse of discretion and will only overturn such an order where it is shown that the ruling caused substantial harm to the case of the party opposing summary judgment.  *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998);

14

Fed.R.Civ.P. 56, advisory committee note to the 2010 amendments (providing that amended subsection(d) set forth the provisions of former subdivision(f) without substantial change). Under Fed.R.Civ.P. 56(d), if the party opposing summary judgment shows by affidavit or declaration, for specified reasons, that he cannot present facts essential to his opposition, the court may: (1) defer the motion for summary judgment; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed.R.Civ.P. 56(d).

Carter asserts that she sought additional discovery regarding the assignment of the promissory note and explanations for the documents attached for the first time to the government's reply. Carter has failed to provide any argument as to how further discovery as to these issues caused substantial harm to her case on appeal. It is also not apparent from the record what evidence Carter seeks in discovery with respect to the assignment of the loan. Furthermore, in the district court, Carter did not seek additional discovery to obtain "explanations" for the documents attached to the government's reply memoradum. Thus, Carter has not shown that the magistrate abused his discretion in ruling on the government's summary judgment motion before allowing her additional discovery as to these issues. *Harbert Int'l, Inc.*, 157 F.3d at 1277.

Next, Carter has not shown that her failure to obtain additional discovery as

15

to the alleged discrepancy regarding the interest rate on the loan caused substantial harm to her case.  Finally, as it appears that the interest that accrued on the loan was incorrectly calculated, at least on the record before us, further discovery may be necessary to resolve the amount of interest that had accrued on the loan.  We leave it to the magistrate's discretion as to whether further discovery is necessary for resolution of this issue.                    IV.

Carter asserts that the magistrate erred in awarding attorney's fees to the government where there was no contractual provision providing for attorney's fees, the government had withdrawn its request because it violated local rules, and Carter's objections to the amount sought were not addressed.

We review a district court's award of fees for abuse of discretion. *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1184 (11th Cir. 1993). The district court has great latitude in formulating an award of attorney's fees, and this latitude is subject only to the necessity of explaining the court's reasoning so that we can undertake our review. *Id.*

Here, the magistrate appears to have adopted, without change, the government's draft order concerning an award of attorney's fees, despite the government withdrawing its request for attorney's fees to which the order was attached.  Further, Carter filed numerous objections to an award of attorney's fees,

16

and the magistrate never addressed any of her objections in awarding the fees. The only explanation provided in the order for the award of attorney's fees was that they were provided for in the underlying contract.  However, the promissory note had no legible term concerning an award of attorney's fees.  As there is nothing else in the record explaining the basis for this award, the magistrate did not address Carter's objections to the award, and the government withdrew its request for attorney's fees, we remand to the magistrate for further proceedings as to whether an award of attorney's fees is warranted.

For the foregoing reasons, we affirm the magistrate's grant of summary judgment in favor of the government except to the extent he determined that the interest on the loan had been correctly calculated, vacate the magistrate's summary judgment concerning the accrued interest on the loan and award of attorney's fees, and remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED in part, VACATED in part, and REMANDED in part.**

17