Jeanette McGILL, Plaintiff,

v.

AMERICAN TRUCKING AND TRANSPORTATION, INS. CO., a Risk Retention Group, Tango Transport, LLC, d/b/a Tango Transport, Inc., and Annie Mitchell, Defendants.

No. 1:13–CV–1923–CAP.

United States District Court, N.D. Georgia, Atlanta Division.

Signed Jan. 8, 2015.

Christopher Ron Smith, John Gary Phillips, Jr., Law Offices of Shane Smith, P.C., Peachtree City, GA, for Plaintiff.

R. Clay Porter, Dennis Corry Porter & Smith, Atlanta, GA, Tonya Marie Forbes Stokes, Dennis Corry Porter & Smith, LLP, Atlanta, GA, for Defendants.

### *ORDER*

CHARLES A. PANNELL, JR., District Judge.

This matter appears before the court on American Trucking and Transportation Insurance Company's ("ATTIC") motion for summary judgment [Doc. No. 128]. ATTIC argues that it is not subject to a direct prejudgment cause of action under O.C.G.A. §§ 40–1–112, 40–2–140 (the "direct action statutes") and should therefore be dismissed from the instant suit.

### I. Factual Background

This case arises out of a July 2011 motor vehicle accident between a vehicle driven by the plaintiff and a tractor-trailer operated by individual defendant Annie Mitchell while she was acting within the scope of her employment with Tango Transport ("Tango"). The tractor-trailer involved in the accident was owned by Tango. ATTIC, through an insurance contract with Tango, provided the liability insurance coverage for the subject tractor-trailer unit.

### II. Discussion

#### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure authorizes a court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir.1996). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247, 106 S.Ct. 2505. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita Electrical Industrial Co.*, 475 U.S. at 586, 106 S.Ct. 1348. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.*

### B. Analysis

#### 1. Applicable Law

As a court sitting in diversity jurisdiction, this court must apply the substantive law of the state in which it is sitting. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If, in a diversity case, the court is required to construe an insurance contract, the district court must likewise apply the applicable state law. *Ruhlin v. New York Life Ins. Co.*, 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290 (1938). "When there is a question as to which state law should be applied, the federal court must follow a conflict of laws rule which conforms to those prevailing in the state in which it sits; viz., the conflict of laws rules of the state." *Maryland Cas. Co. v. Williams*, 377 F.2d 389, 392–93 (5th Cir.1967) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).

Here, Georgia follows the traditional rule of *lex loci contractus*. *Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 842 F.Supp.2d 1360, 1367 (N.D.Ga.2012) (citing *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir.1998)). Under *lex loci contractus*, contracts are governed by the law of the place where they were "made," and an insurance contract is "made" where it was delivered. *Id.; see also Convergys Corp. v. Keener*, 276 Ga. 808, 582 S.E.2d 84, 86 (2003). In this case, the liability policy written by ATTIC was delivered in the State of Louisiana [Doc. No. 135–2 at 3]. Thus, Louisiana law will govern any needed interpretation of the underlying insurance contract.

#### 2. ATTIC's Arguments in Support of Summary Judgment

ATTIC makes two fundamental arguments in support of its motion for summary judgment. First, ATTIC contends that because it has admitted that it must provide insurance coverage for the tractor-trailer unit involved in the subject incident, the purpose behind the direct action statutes is satisfied; and, since the legislative aim of these provisions has been met (i.e., the plaintiff's assured recovery of compensation for injuries caused by the negligence of an insured motor carrier), ATTIC argues that its continued presence in the case serves only to prejudice the remaining the defendants. Moreover, as an alternative argument, ATTIC asserts that because Tango has a "self-insured retention," which Tango must pay in full before collecting from ATTIC, ATTIC is an "excess insurer" not subject to joinder under the direct action statutes.

#### 3. Application of Georgia's Direct Action Statutes

The general rule in Georgia is that "a party may not bring a direct action

against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy." *Hartford Ins. Co. v. Henderson & Son, Inc.*, 258 Ga. 493, 371 S.E.2d 401 (1988) (citing *Seaboard Coast Line R.R. Co. v. Freight Delivery Service, Inc.*, 133 Ga.App. 92, 210 S.E.2d 42 (1974)). As of present, Georgia has two direct action statutes that serve as exceptions to the general rule. *See* O.C.G.A. §§ 46–7–1 to 46–7–15 (repealed 2012), 40–1–112, 40–2–140.[1] The direct action statutes—which permit an injured plaintiff to join a motor carrier's insurer in an action against the insured motor carrier—were designed "to protect members of the general public against injuries caused by the negligence of a Georgia motor carrier." *Sapp v. Canal Ins. Co.*, 288 Ga. 681, 706 S.E.2d 644, 646 (2011) (citing *DeHart v. Liberty Mut. Ins. Co.*, 270 Ga. 381, 509 S.E.2d 913 (1998)). "[T]he insurance carrier is not, in reality, a separate party for purposes of liability, but, rather, is equivalent to a provider of a substitute surety bond, creating automatic liability in favor of a third party who may have a claim for damages for the negligence of the motor common carrier." *Andrews v. Yellow Freight System, Inc.*, 262 Ga. 476, 421 S.E.2d 712, 713 (1992) (citing *Progressive Casualty Insurance Co. v. Bryant*, 205 Ga.App. 164, 421 S.E.2d 329 (1992)).

To establish direct action, (1) the subject carrier must be a "motor carrier" as defined by the direct action statutes; (2) the plaintiff must have sustained an actionable injury; and (3) the insurer must be an "insurance carrier." *See* O.C.G.A. § 40–2–140(d)(4) ("Any person having a cause of action, whether arising in tort or contract, under this Code section may join in the same cause of action the motor carrier and its insurance carrier."); O.C.G.A. § 40–1–112(c) ("It shall be permissible under this part for any person having a cause of action arising under this part to join in the same action the motor carrier and the insurance carrier, whether arising in tort or contract."); *Sapp*, 706 S.E.2d at 647 (stating that a prima facie case under the direct action statutes is established by showing (1) that the carrier meets the general definition of "motor common carrier" and (2) that the plaintiff sustained an actionable injury); *see also Lewis v. D. Hays Trucking, Inc.*, 701 F.Supp.2d 1300, 1319 (N.D.Ga.2010) (holding that direct action was not authorized because the insured was not a "motor carrier").

In this case, ATTIC does not dispute that Tango is a "motor carrier," nor does it contend that the plaintiff has failed to bring a cause of action for an actionable injury under the direct action statutes.[2] In its reply brief, though, ATTIC maintains that it is not an "insurance carrier" but rather a "risk retention group" not subject to direct action. According to ATTIC, a risk retention group is not an insurance carrier, and the terms cannot be used interchangeably because of the strict con-

---

1. The joinder provisions of O.C.G.A. § 40–2–140 apply to both intrastate and interstate motor carriers. *See Bramlett v. Bajric*, No. 1:12–CV–2148, 2012 WL 4951213, at *2–3 (N.D.Ga. Oct. 17, 2012).

2. Likewise, ATTIC does not argue that the plaintiff fails to show that the subject liability policy was filed and approved by the appropriate regulatory agency. *See Southern Gen. Ins. Co. v. Waymond*, 221 Ga.App. 613, 472 S.E.2d 325 (1996) (holding that "[u]nder the unambiguous terms of the statute, as construed in *Glenn McClendon [Trucking Co. v. Williams*, 183 Ga.App. 508, 359 S.E.2d 351 (1987)], a plaintiff must prove that a policy was filed and approved by the [appropriate regulatory commission] in order to maintain a direct action against the insurer of a motor contract carrier.").

struction afforded to the direct action laws. Despite any potential merit to this argument, because ATTIC raised this argument for the first time in its reply brief, the argument is abandoned and will not be addressed by the court. *United States v. Carter*, 506 Fed.Appx. 853, 859 (11th Cir. 2013) (citation omitted) (restating the familiar principle that arguments raised for the first time in a reply brief are abandoned).

 As mentioned above, ATTIC also argues that its concession to liability under the subject insurance policy satisfies the purpose of the direct action statutes; as a result, ATTIC reasons that its continued presence in the case works only to prejudice the remaining defendants. Here, the critical question is whether an insurance carrier may subsequently withdraw from a lawsuit to which it was properly joined under the direct action statutes when the insurance carrier admits to liability under the relevant insurance contract.

 The court cannot locate (nor does ATTIC offer) any authority suggesting that an insurer joined under the direct action statutes may unilaterally withdraw from the case once the insurance carrier concedes that it must provide coverage in the event of a judgment against the insured motor carrier. In fact, such a regimen would cut against the purpose for which the direct action statutes were enacted. *See Andrews*, 421 S.E.2d at 713. For instance, if an insurance carrier were permitted to exit a case before judgment, there would not be automatic liability in favor of the third party who succeeded in its claim against the insured motor carrier. *See id.* This would hold true even when the insurance carrier acknowledged its responsibilities under the insurance contract and promised a quick and efficient recovery of compensation of any judgment awarded. Put otherwise, an insurance carrier's admission of liability under its insur-

ance contract does not as a matter of law negate the application of the direct action statutes such that a previously joined insurance carrier is entitled to dismissal from the case. Once the insurance carrier is joined under the direct action statutes, the insurance carrier must remain in the case until final judgment or until it is later dismissed by the plaintiff or the court.

To the same extent, ATTIC's assertion that the remaining defendants in this case will be prejudiced by its continued presence is similarly without merit. As observed by the court in *Andrews v. Yellow Freight System, Inc.*, "[T]he mere presence of the insurer as a party defendant should have no effect on the issues of liability or injuries [pertaining to other defendants], and should not affect the amount of the verdict." *Id.* Nonetheless, to the extent that the insurance carrier's joinder does somehow prejudice other parties, the proper channel for challenging this result is through the Georgia General Assembly.

Because ATTIC points to no authority supporting the novel proposition discussed above, and because the plaintiff has stated a prima facie case for direct action, the court holds that ATTIC is not entitled to summary judgment on the grounds that its admission of liability under its insurance contract with Tango removed it from the purview of the direct action statutes.

#### 4. Direct Action Against Excess Insurers

 Because Tango must first pay $350,000.00 before collecting from ATTIC, ATTIC lastly contends that it is Tango's "excess insurer," a class of insurers not subject to a direct pre-judgment cause of action. To support its self-classification, ATTIC characterizes the aforesaid payment as a "self-insured retention" and equates the self-insured retention to a primary insurance plan. In response, the

plaintiff argues that the plain language of the operative insurance contract classifies ATTIC as a primary liability insurer and that the $350,000.00 deductible does not alter ATTIC's status as a primary insurer by somehow converting the underlying insurance contract into some form of self-insurance. As noted above, because the underlying insurance policy was delivered in Louisiana, Louisiana law governs the contract.

 To begin, it is well established that a motor carrier's excess liability insurer is not subject to direct suit under the direct action statutes. *Jackson v. Sluder*, 256 Ga.App. 812, 569 S.E.2d 893 (2002); *Werner Enterprises, Inc. v. Stanton*, 302 Ga.App. 25, 690 S.E.2d 623 (2010). This is true regardless of whether the primary liability protection is covered by an insurance policy or by a self-insurance plan. *See Werner Enterprises, Inc.*, 690 S.E.2d at 623. A primary insurance policy, in turn, is "that policy which ranks ahead of any excess policy, i.e., its proceeds need be exhausted prior to any payment being made from excess or umbrella policies." *Sherlock v. Ocean Salvage Corp.*, 785 So.2d 932, 936 (Ct.App.La.2001) (citation omitted). Conversely, "[a] true excess policy is one that provides that the insurer is liable only for the excess above and beyond that which may be collected from the primary insurer." *Id.* (citing *Penton v. Hotho*, 601 So.2d 762, 764–64 n. 3 (Ct.App.La.1992)). Under Louisiana law, when an insurance policy's wording is clear and unambigu-

ous—the determination of which is a question of law-the insurance contract must be enforced as written. *Cadwallader v. All-state Ins. Co.*, 848 So.2d 577, 580 (La.2003) ("Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.") (citations omitted).

Here, the subject insurance contract requires Tango to reimburse ATTIC "for any amounts paid by ATTIC ... for any one accident or occurrence up to a maximum of the *Deductible* set out in the Liability Policy Declaration." [Doc. No. 135–4 at 8] (emphasis added). The relevant portion of the Liability Policy Declaration states that the applicable "Deductible" is $350,000.00 [Doc. No. 135–2 at 3].[3] Under Louisiana law, even if the court were to find that the "deductible" in the underlying insurance contract is a "self-insured retention,"[4] a self-insured retention is not an insurance plan. *Alwell v. Meadowcrest Hosp., Inc.*, 971 So.2d 411, 415 (Ct.App.La.2007) (citing *Hearty v. Harris*, 574 So.2d 1234 (La.1991)). As such, ATTIC's argument that Tango's self-insured retention payment of $350,000.00 serves as primary insurance under the direct action statutes is without merit [Doc. No. 139 at 4]. In other terms, the $350,000.00 deductible is not a separate insurance plan that serves to convert ATTIC into an "excess insurer" under the insurance contract.

---

3. The insurance contact also distinguishes "premiums" from "deductibles" [Doc. No. 135–2 at 3].

4. In the ambit of insurance law, "self-insured retentions are, in effect, large deductibles." Allan D. Windt, *Self–Insured Retention*, INS. CLAIMS AND DISPUTES 11:31 (6th ed.2014). One difference between a deductible and a self-insured retention is that "a deductible must be advanced by an insurer on behalf of the

insured, while a self-insured retention need not be advanced." *Id.* (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Lawyers' Mut. Ins. Co.*, 885 F.Supp. 202, 206 (S.D.Cal. 1995)). Here, because ATTIC makes payment advances for Tango and because the insurance policy explicitly classifies the $350,000.00 payment as a "deductible," the court concludes that ATTIC's classification of said payment as a self-insured retention is nevertheless without merit.

Furthermore, the underlying insurance contract between ATTIC and Tango states that the "insurance is primary and [ATTIC] shall not be liable for amounts in excess of $5,000,000.00 per accident." [Doc. No. 135–6]. The Trucking Liability and Coverage Form explains, "ATTIC ... will pay all sums an insured must pay to others for damages resulting from bodily injury or property damage caused by an accident and resulting from the ownership, maintenance or use of a Covered Trucking Unit." [Doc. No. 135–3 at 4] (emphasis omitted). Nowhere in the underlying insurance contract does it provide that ATTIC is "liable only for the excess above and beyond that which may be collected from the primary insurer." In light of the clear and unambiguous language of the controlling insurance contract, the court holds that ATTIC is Tango's primary insurance carrier and is thus subject to a direct pre-judgment cause of action by the plaintiff.

## III. Conclusion

For these reasons, ATTIC's motion for summary judgment is denied in its entirety [Doc. No. 128].

**SO ORDERED.**