568 So.2d 588 (1990)
Thomas FUTCH
v.
COMMERCIAL UNION INSURANCE CO., et al.
Robert G. WILLIAMS
v.
COMMERCIAL UNION INSURANCE CO., et al.
Nos. 89-CA-2357, 89-CA-2358.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 1990.
*589 John H. Gniady, New Orleans, for appellant Robert G. Williams.
Montgomery, Barnett, Brown, Read, Hammond & Mintz, Quentin F. Urquhart, Jr., and Greg S. Abramson, New Orleans, for defendant-appellee Commercial Union Ins. Co.
Christopher T. Grace, Jr., New Orleans, for appellant Dr. Thomas Futch.
Before SCHOTT, BARRY and BYRNES, JJ.
BYRNES, Judge.
Thomas Futch and Robert G. Williams appeal a summary judgment rejecting insurance coverage under Commercial Union Insurance Company's (Commercial Union) special multi-peril policy in a personal injury action. We affirm.
On the morning of December 26, 1984, Robert G. Williams, Vice President of Manna International Manufacturing, Inc. [Manna], experienced a breakdown when his station wagon stalled at the intersection of Chef Menteur Highway and Michoud Boulevard in New Orleans East. Williams called Dr. Thomas Futch, President of Manna, who drove from Manna to the scene and placed his car in front of William's vehicle. While the two men attempted to tie a rope between the two vehicles, Dr. Futch's car was struck by another vehicle driven by Hien Thanh Vu. The force of impact caused Dr. Futch's vehicle to hit both Dr. Futch and Mr. Williams, causing injuries.
Futch and Williams filed separate lawsuits against Hien Thanh Vu and various insurance companies including Commercial Union that had issued two insurance policies to Manna, plaintiffs' employer. After the suits were consolidated, Dr. Futch settled his claims against all other defendants, reserving his rights against Commercial Union, which also remained as a defendant with respect to Mr. Williams.
Commercial Union filed Motions for Summary Judgment, contending that neither its special multi-peril policy, number FEWG07061, nor its umbrella policy, number CED086993 (both effective January 14, 1984 to January 14, 1987), provided coverage for automobile liability and/or uninsured *590 motorist coverage. The district court denied summary judgment with respect to the umbrella policy but granted the motion with respect to the special multi-peril policy from which this appeal followed.
On appeal, plaintiffs contend that the trial court erred in granting summary judgment to Commercial Union with respect to the special multi-peril policy based on the following claims: (1) because the second umbrella policy required underlying automobile liability limits of $500,000, the first multi-peril policy must be interpreted to constitute the necessary underlying insurance for the umbrella policy; (2) if the insurance policy provides any automobile liability insurance, it must also provide uninsured motorist coverage as mandated under LSA-R.S. 22:1406, unless waived in writing; and (3) because an endorsement which amended Section II of the special multi-peril policy is remedial, a genuine issue exists as to whether this coverage was intended to be included from the inception of the policy. Futch and Williams assert that the special multi-peril policy provides automobile liability insurance and underinsured motorist insurance to plaintiffs. In support of summary judgment, Commercial Union argues that there is no ambiguity in the multi-peril policy; that the policy did not provide liability or uninsured motorist coverage; and that the endorsement to the policy after the date of the accident was not remedial and still did not result in affording coverage to the plaintiffs.
Commercial Union's multi-peril policy, no. FEWF02061, providing coverage for Manna states in part:
COMPREHENSIVE GENERAL LIABILITY COVERAGE PART (Special Multi-Peril Policy)
BODILY INJURY LIABILITY
PROPERTY DAMAGE LIABILITY
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
bodily injury or property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

I. EXCLUSIONS
This insurance does not apply:
(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;
(b) to bodily injury or property damage arising out of the ownership maintenance, operation, use, loading or unloading of
(1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or
(2) any other automobile or aircraft operated by any person in the course of his employment by any insured, but this exclusion does not apply to the parking of any automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured;
The effective version of the Louisiana uninsured motorist statute, LSA-R.S. 22:1406(D)(1)(a) stated:
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state which respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, *591 under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which intially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
At issue is whether Commercial Union's multi-peril policy provides automobile insurance, which included uninsured or underinsured motorist coverage to the plaintiffs. The parties do not dispute that Futch and Williams, as executive officers of Manna, were "insureds" under the terms of the policy. Further, plaintiffs owned their vehicles that were involved in the accident.
Commercial Union claims that the multi-peril policy is a general liability insurance policy providing coverage for accidents arising out of manufacturing operations and not a policy of automobile liability insurance. The district court found no automobile liability coverage under Commercial Union's multi-peril policy. We agree. In the General Schedule, specific premium charges were made for food products manufacturing and broad form CGL but no premium charge was included for automobile liability coverage. The policy contained no schedule of covered vehicles. The terms of the multi-peril policy were unambiguous and specifically excluded automobile coverage.
Plaintiffs argue that they were afforded uninsured motorist coverage without a written waiver under LSA-R.S. 22:1406. That statute states in part: "[n]o automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle" [emphasis added] shall be issued without including uninsured motorist protection without a written rejection of uninsured motorist coverage. Because Commercial Union's multi-peril policy does not provide any automobile insurance, LSA-R.S. 22:1406 does not apply. By providing an exclusion for bodily injury or property damage arising out of ownership of an automobile operated by any insured or any automobile or aircraft operated by any person in the course of employment by any insured, the policy does not envision automobile insurance coverage for the plaintiffs. The uninsured motorist statute does not require uninsured motorist coverage unless the insured is covered for his liability arising out of the accident. The uninsured motorist statute did not intend to make uninsured motorist coverage broader than liability coverage. Stewart v. Robinson, 521 So.2d 1241 (La.App. 3rd Cir. 1988), appeal dismissed, writ granted 526 So.2d 785 (La.1988); Saffel v. Bamburg, 478 So.2d 663 (La.App. 3rd Cir.1985), writ denied, 481 So.2d 1335 (La.1986). For one to be insured under the uninsured provisions, he must first be insured under the liability provisions. Seaton v. Kelly, 339 So.2d 731 (La.1976); Robertson v. Cumis Ins. Co., 355 So.2d 1371 (La.App. 3rd Cir. 1978), writ denied, 357 So.2d 1153 (La. 1978).
In its Reasons for Judgment the district court noted that "[a] review of the umbrella policy reveals that the declaration sheet under Item-3 which is entitled `Underlying Insurance' clearly states that there is automobile liability coverage that includes coverage for non-owned and hired car coverage." The district court also stated that, "Endorsement 1, entitled `Amendatory EndorsementUmbrella Policy Louisiana' provides that exclusion (j) does not apply if the company is required to provide uninsured *592 or underinsured motorist insurance unless the named insured has rejected such insurance in writing." Based on the provisions of the umbrella policy, that court concluded that there is uninsured motorist coverage under the umbrella policy. Commercial umbrella liability policies have been found to be policies of automobile liability insurance which must provide uninsured motorist coverage absent a written waiver by the insured. See Southern American Ins. Co. v. Dobson, 441 So.2d 1185 (La. 1983); Capone v. King, 467 So.2d 574 (La. App. 5th Cir.1985), writ denied, 468 So.2d 1203, writ denied, 468 So.2d 1205 (La. 1985); Lee v. USAA Cas. Ins. Co., 540 So.2d 1083 (La.App. 1st Cir.1989), writ denied, 542 So.2d 514; reconsideration denied, 544 So.2d 384; and reconsideration denied 544 So.2d 385 (La.1989); and Coates v. Northlake Oil Co. Inc., 499 So.2d 252 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987). However, in the instant case, the multi-peril policy specifically provided no automobile liability coverage.
Plaintiffs contend that the amended endorsement, which was perfected after the accident, is remedial and showed that automobile coverage was intended to be included under the multi-peril policy. Under the policy change, the exclusion provision stated that the following is not insured: "(iii) an executive officer of the named insured with respect to an automobile owned by him or a member of his household." Futch and Williams were not "insureds" under the Non-owned and Hired Auto Coverage added to the policy effective January 24, 1985. Plaintiffs failed to show that the changed endorsement provided them with automobile insurance coverage.
Coverage is not afforded to the plaintiffs under Commercial Union's multi-peril policy. For the foregoing reasons, the judgment of the trial court is affirmed and all costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.