625 So.2d 1019 (1993)
Thomas FUTCH
v.
COMMERCIAL UNION INSURANCE CO., et al.
No. 93-C-0493.
Supreme Court of Louisiana.
October 28, 1993.
Order Clarifying Decision on Limited Grant of Rehearing January 6, 1994.
Christopher T. Grace, Jr., Metairie, for applicant.
Quentin F. Urquhart, Jr., Robert J. Young, Jr., New Orleans, for respondent.
WATSON, Justice.[1]
Plaintiff, Dr. Thomas J. Futch, II, suffered devastating personal injuries as a consequence of a December, 1984, automobile accident. Futch claimed underinsured (UM) damages from Commercial Union Insurance Company, the excess/umbrella insurer of his employer, Manna International Manufacturing, Inc. The trial court's summary judgment *1020 in favor of Commercial Union was affirmed by the court of appeal.
On December 26, 1984, Robert G. Williams, Vice President of Manna, had car trouble at the intersection of Chef Menteur Highway and Michoud Boulevard in New Orleans East. After his station wagon stalled, Williams called Futch, who left the office and drove to Williams' aid. While Williams and Futch were arranging a tow rope between their cars, a third vehicle hit the Futch car, propelling it into Futch and Williams. During Futch's extensive medical treatment, blood transfusions allegedly transmitted the HIV virus. Futch's damages apparently exceeded the third party's coverage of $10,000/$20,000, his own UM insurance coverage and all other available insurance. He and his wife filed for personal bankruptcy in 1993. All of Futch's claims have been settled, except this one against Manna's umbrella insurer.
The sparse record shows Futch as the sole incorporator of Manna in July of 1983. He was the corporation's registered agent. The three initial Manna directors were Futch, Williams and Pierre Lemieux.
Commercial Union issued two insurance policies to Manna, a $500,000 multiperil policy and a $1,500,000 umbrella policy. A decision finding no coverage under the multiperil policy is final. Futch v. Commercial Union Ins. Co., 568 So.2d 588 (La.App. 4th Cir. 1990). It is undisputed that Futch, president of Manna, is an insured under the umbrella policy. In July of 1989, the trial court denied Commercial Union's motion for summary judgment on the umbrella policy because there was no evidence of a UM waiver, stating:
"The Court has not been provided with a copy of any written rejection of uninsured motorist coverage by the insured."
On third consideration, the trial court granted Commercial Union's motion for summary judgment in February of 1992. The court of appeal affirmed. Futch v. Commercial Union Ins. Co., 613 So.2d 1013 (La.App. 4th Cir.1993). A writ was granted to consider whether genuine issues of material fact precluded summary judgment. 616 So.2d 690 (La.1993).
Because Manna did not own or operate automobiles, Manna's basic multiperil policy did not cover any automobiles. Manna's three employee/directors, Futch, Williams and Lemieux, were paid a flat monthly fee to use their own automobiles on company business. They purchased their own insurance. There is no evidence of their private policy limits.
Manna had an umbrella policy with a $1.5 million limit of liability. The policy period was from January 14, 1984, until January 14, 1985. The court of appeal decided there was no umbrella automobile liability coverage under its interpretation of an endorsement issued with the policy. The endorsement, in the court of appeal's view, required underlying coverage with Commercial Union or three sister companies, The American Employers' Insurance Company, The Employers' Fire Insurance Company and The Northern Assurance Company of America.
The umbrella policy provided "comprehensive general liability" coverage, including automobile liability insurance for use of nonowned and hired automobiles. Absent a valid waiver, the policy provided protection against uninsured and underinsured motorists. Southern American Ins. Co. v. Dobson, 441 So.2d 1185 (La.1983). Commercial Union's Policy Exclusion J, which excludes UM claims, was endorsed as inapplicable in Louisiana. Commercial Union recognized that it provided excess Louisiana UM coverage unless the named insured rejected that insurance.
I. COVERAGE.
Item 3 on the declarations page of the umbrella policy entitled "Underlying Insurance" mandates $500,000 underlying limits for comprehensive general liability and automobile liability. An endorsement issued with the policy entitled "AutomobilesLimitation of Coverage" provides:
It is agreed that, except insofar as coverage is available to the Insured for the full limits of liability as set forth for policies of underlying insurance issued by the Commercial Union Insurance Company, the American Employers' Insurance Company, *1021 The Employers' Fire Insurance Company and The Northern Assurance Company of America in Item 3 of the Declarations, this policy shall not apply to the ownership, maintenance, operation, use, loading or unloading of any automobile.
The exact meaning of the endorsement is not clear. The language might be an overbroad reference to owned automobiles, since an insurer could not reasonably require a named underlying insurer for nonowned automobiles. The endorsement might also have been intended to preclude primary coverage through a drop down. See Kelly v. Weil, 563 So.2d 221 (La.1990), and Robichaux v. Randolph, 563 So.2d 226 (La.1990).
The court of appeal decided that the endorsement eliminated automobile liability coverage if the automobile did not have underlying coverage with one of the four named insurers. However, the language is ambiguous. Since Manna did not own any automobiles, the policy provided excess liability coverage only for nonowned and hired automobiles. The endorsement does not preclude excess liability coverage for nonowned automobiles.
Condition P of the umbrella policy is entitled "Maintenance of Underlying Insurance." It states:
It is a condition of this policy that the policies set forth in Item 3 of the Declarations shall be maintained in full effect during the period of this policy without reduction of coverage or limits except for any reduction of the aggregate limit or limits contained therein solely by payment of damages for personal injury, property damage and advertising liability which occur during the same annual period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy, but in the event of such failure the Company shall only be liable to the same extent as it would have been had the Insured complied with the said condition.
Under Condition P, absence of the requisite underlying insurance limited coverage to the excess over $500,000 up to $1.5 million in recoverable damages. See Washam v. Chancellor, 507 So.2d 806 (La.1987), and Thibodeaux v. Burton, 538 So.2d 1001 (La.1989). Condition P also preserved the umbrella coverage if the underlying insurance was with an unnamed company or was nonexistent.
Since Commercial Union's multiperil policy excluded automobile liability coverage, Manna's employee/directors were paid to buy their own basic coverage. The umbrella policy provided nonowned automobile liability insurance coverage above $500,000. Manna thereby protected itself from excess liability for business use of its employees' automobiles.
The trial court and the court of appeal erred in finding no coverage under Commercial Union's umbrella policy. The endorsement limitation on liability is ambiguous.
II. WAIVER OF UM COVERAGE.
Because of the strong public policy favoring UM coverage, formal rejection of that benefit is required. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). The insurer has the burden of proving a legal rejection of UM coverage. Henson v. Safeco Ins. Companies, 585 So.2d 534 (La.1991).
Manna is the named insured in the policy. In June of 1984, approximately midway into the policy period, there was a purported rejection of UM coverage apparently signed by Lemieux. A large "X" marked the signature line. There was no indication on the printed form that Lemieux was authorized to sign the rejection on behalf of Manna. There was no corporate resolution authorizing his signature. Futch's affidavit stated that Lemieux did not have authority to waive UM coverage in the umbrella policy. Insurance agent Thomas Brasher's affidavit stated that Lemieux had full insurance authority. However, Brasher, who obtained Lemieux's signature, admitted in deposition: "I won't say specifically uninsured motorists." [Exhibit O.]
At the time of this 1984 accident, LSA-R.S. 22:1406D(1)(a) spoke of a document in which "the named insured or his legal representative ... initially rejects such coverage or selects lower limits...." (Emphasis added.) [The phrase remains in the statute but has been moved to Section *1022 D(1)(a)(ii).] The implication is that the rejection or selection must be contemporaneous with a policy application or the policy's issuance. Since the rejection or selection becomes part of the policy, it should not affect an existing policy.
Even if Lemieux were authorized to sign the rejection of UM coverage, it is doubtful that the rejection could alter the existing policy midway into the policy period. There is also some indication that agent Brasher insisted on the UM waiver and failed to give Manna's officers an informed choice. See Henson v. Safeco Ins. Companies, 585 So.2d 534 (La.1991), and Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992).
The trial court and the court of appeal did not decide whether there was a valid informed rejection, authorized by Manna, six months into the policy period. Whether the waiver was authorized and whether it was valid are disputed issues of material fact. See Cavalier v. La. Farm Bureau Cas. Ins., 528 So.2d 1038 (La.App. 5th Cir.1988), writ granted, reversed and remanded for trial on the merits at 530 So.2d 73 (La.1988). The summary judgment must be reversed.
For the foregoing reasons, the judgment of the court of appeal is reversed, the summary judgment is vacated and the case is remanded to the trial court for trial or, the merits.
REVERSED, SUMMARY JUDGMENT VACATED AND REMANDED.
MARCUS, J., dissents and assigns reason.
LEMMON, J., concurs and assigns reasons.
HALL, J., concurs in the result and assigns reasons.
KIMBALL, J., additionally concurs and assigns reasons.
ORTIQUE, J., concurs in the result and assigns reasons.
HALL, Justice, concurring in the result.
I concur in the reversal of the summary judgment and remand for further proceedings.
After reading and rereading the exclusionary endorsement upon which the court of appeal relied in finding automobile coverage was excluded from this umbrella policy, I believe I finally understand its meaning.
The clause means that if the automobile policies of the type described in the declarations issued by Commercial Union or one of its affiliated companies do not provide coverage, then the umbrella policy does not provide coverage. The umbrella policy does not contain the detailed provisions as to coverage that an automobile liability policy contains. The purpose of the endorsement is to limit the automobile coverage of the umbrella policy to the same coverage ordinarily provided (available) in a Commercial Union automobile policy.
The endorsement does not mean that there is no automobile coverage if the underlying insurance is not in effect. This situation is governed by Condition "P" of the policy, as the majority opinion holds.
I believe this is the meaning of the endorsement, but I know that the endorsement is ambiguous, that is, subject to more than one interpretation, and must be interpreted in favor of coverage.
I disagree, however, with the majority's discussion of the waiver of UM coverage issue, which this court should not reach because the issue has not been considered by either the trial court or court of appeal. The questions of authority to sign the waiver and the effect of a waiver executed during the policy period are issues which should be decided by the trial court on remand without premature comment by this court.
KIMBALL, Justice (Additionally concurring).
I concur with the majority's opinion but find that since there are genuine issues of material fact warranting reversal of the summary judgment, any discussion of whether a UM waiver may be valid if made after a policy's issuance is unnecessary dictum.
MARCUS, Justice (dissenting).
I respectfully dissent from the majority's finding of coverage in this case. The policy's *1023 automobile endorsement provides that the policy "shall not apply to the ownership, maintenance, operation, use, loading or unloading of any automobile" except insofar as coverage is available to the insured from one of the four listed companies. Condition P requires that the underlying policies "shall be maintained in full effect during the period of this policy...." (emphasis added). The last sentence of Condition P states that "[f]ailure of the Insured to comply with the foregoing [i.e., maintain the underlying insurance] shall not invalidate the policy...."
Taken together, these two provisions are clear and unambiguous. The umbrella policy does not apply to automobiles unless the insured has underlying automobile insurance with one of the four named insurers. In the event the insured does obtain insurance with one of the named insurers, but fails to maintain that insurance, Condition P provides that such a failure does not invalidate the umbrella policy. However, where the insured never obtains insurance with one of the named insurers, there is no failure to maintain insurance, and Condition P does not apply.
In the present case, it is undisputed that Dr. Futch did not have automobile insurance with one of the four named insurers. Accordingly, the umbrella policy does not apply to automobiles. By failing to obtain insurance, the question of maintenance of insurance under Condition P is irrelevant. For these reasons, I find no coverage and would not reach the issue of the validity of the UM rejection.
ORTIQUE, Justice, concurring.
I join with my colleague, Justice Hall, in his "concurring in the result".
I would stress with even greater emphasis the presence of condition "P" of the Commercial Union policy. It is this feature of the policy that gives meaning, significance and life to the umbrella policy when there is no underlying or primary insurance. To ignore this specification is to "write it out" of the policy. Since it is presumed that an insurer does not compose the contents of a policy for purely "decorative purposes", I am mandated to find a meaning for this feature. I would hasten to add that the insured pays a premium for each and every protection afforded to him by his insurer. Every provision is presumed to have a calculated cost.
It is basic hornbook insurance law, needing no citation of authority, that policy provisions having been authored by the insurance company, must be construed most favorably toward the insured and coverage.
If regurgitation is appropriate, kindly note the principles enunciated in: Bobby Jefferson v. Monumental Gen. Ins. Co., 620 So.2d 271 (La.1993); Mary and Paul Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La.1988).
LEMMON, Justice, concurring.
I agree with Justice Hall that the endorsement was probably intended to limit the coverage for automobiles under the umbrella policy to that provided (available) to the insured in the underlying policies. The title to the endorsement, "Automobiles-Limitation of Coverage," suggests this, as does the similarity to exclusions for owned aircraft and other exclusions in (m), (n), (o) and (p). At least, the exclusion is subject to more than one reasonable interpretation, and the interpretation favoring coverage should be applied.
The policy could have required underlying coverage with one of relator's affiliated companies or with any insurer, but (except for Condition P) did not expressly do so. Certainly the endorsement did not clearly express such a requirement. The endorsement therefore does not override Condition P which provides that the insured's failure to maintain underlying coverage does not invalidate the policy, but simply makes the threshold of the umbrella insurer's liability the amount stated for the underlying policies in the declaration.
I expressly decline to join in the dicta in Part II regarding rejection of UM coverage.

On Application For Rehearing
PER CURIAM.
The application for rehearing is granted and the decision of the court is amended only to clarify that the summary judgment is reversed and the case is remanded to the trial court for further proceedings. Our decision does not preclude the litigation of any issue of law or fact between the parties. Otherwise, the application for rehearing is denied.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, Calogero, C.J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).