MOLAISON, J.
*984 In consolidated personal injury actions brought by the driver and a guest passenger in a vehicle that was struck by a truck owned by Water Works Industrial Services, LLC ("Water Works"), plaintiffs appeal a judgment dismissing their claims against Aspen Specialty Insurance Company ("Aspen") after a pre-trial evidentiary hearing to determine whether the policy limits of the policy underlying Aspen's excess coverage were exhausted, a condition precedent to Aspen's liability. The trial court found that coverage under the excess policy was not triggered because Water Works' automobile liability policy was not listed as an underlying policy in the excess policy. For the following reasons, we reverse the trial court judgment and remand the matter for further proceedings.
Facts and Procedural History
The background facts are undisputed. The accident occurred in St. John the Baptist Parish on January 16, 2015, when a vehicle being driven by plaintiff Tramissian Davis, in which plaintiff Cardell Ellis and another person were guest passengers, was struck by a truck being driven by Heath McDonald, a Water Works employee in the course and scope of his employment. Davis, Ellis and the other guest passenger were injured in the accident.
Later in 2015, Davis and Ellis filed separate lawsuits against McDonald, Water Works, and State National Insurance Company ("State National"), Water Works' automobile liability insurer, for damages resulting from the accident. Davis also sued his uninsured motorist carrier, State Farm. The suits were consolidated.
In late 2016, Aspen was named as a defendant by both plaintiffs, who alleged that Aspen provided excess automobile liability coverage to Water Works for the accident. Aspen filed answers with affirmative defenses and exceptions in both cases. Aspen averred that its insurance policy contained the best evidence of its terms, conditions, coverages and exclusions. Aspen did not assert that the State National policy was not a valid underlying policy despite the fact that Peerless Indemnity Insurance Company ("Peerless"), the underlying automobile liability insurer listed in Aspen's policy, was not named as a defendant in either lawsuit.
In May 2017, plaintiffs dismissed their claims against State National with prejudice after State National paid its policy limits of $ 1,000,000 to settle the claims of Davis, Ellis and the other guest passenger.[1] In the motion and order to dismiss, plaintiffs reserved their rights against McDonald, Water Works and Aspen, with the stipulation that the reservation of rights as to McDonald and Water Works was "only *985 to the extent that those parties have valid and collectible insurance with Aspen Specialty Insurance Company or any other insurer except State National Insurance Company, Inc."
A jury trial was set for October 2017. Shortly after the trial date was set, Aspen sought leave to file a motion for summary judgment on the issue of whether the underlying liability coverage was exhausted in light of the fact that the excess policy listed Peerless, and not State National, as the underlying carrier. The trial court found the motion to be untimely under La. C.C.P. art. 966(B)(1) because it was filed less than 65 days before trial, but held an evidentiary hearing on the substance of the motion in advance of the jury trial.
For reasons discussed in more detail below, the trial court found that the underlying automobile liability coverage was not exhausted, and that Aspen was not liable to plaintiffs, because State National's policy was not listed as an underlying policy in Aspen's excess policy and the Peerless policy that was listed as an underlying policy was cancelled by Water Works before the date of the accident. With respect to each plaintiff, the trial court dismissed the claims against Aspen and also dismissed "this case."
Davis filed a motion for new trial, which the trial court denied. Both plaintiffs appealed the judgment, assigning as error the trial court's ruling on the excess coverage issue and its dismissal of the entire case when the only issue before the court concerned the liability of one defendant, Aspen. The trial court stayed the proceedings pending appellate review of the judgment of dismissal.
Insurance Policies
Water Works purchased the Aspen excess insurance policy with an initial policy period of 1/1/14 to 1/1/15. The policy provided additional coverage to Water Works if an underlying policy listed in the Aspen policy paid its policy limits. The schedule of underlying policies in the Aspen policy included an Aspen General Liability and Environmental Exposure policy, a LUBA worker's compensation policy, and the Peerless automobile liability policy. The required underlying coverage limit for the Peerless policy was a combined single limit of $ 1,000,000. The maximum coverage available under the excess policy was $ 5,000,000.
Water Works purchased a Peerless automobile liability policy with an initial policy period of 1/1/14 to 1/1/15 and a combined single loss limit of $ 1,000,000. The policy remained in effect for all of 2014 and was automatically renewed for the following year, 1/1/15 to 1/1/16. However, Water Works did not pay the renewal premium. Water Works asked Peerless to cancel the policy "flat," effective January 1, 2015, which Peerless did on January 15, 2015.[2]
Water Works purchased an automobile liability policy from State National for the policy period 1/1/15 to 1/1/16, with a combined single loss limit of $ 1,000,000, but did not notify Aspen of this or ask Aspen to list the State National policy in place of the Peerless policy in Aspen's schedule of underlying policies. There was no lapse in coverage because the State National policy took effect on January 1, 2015, the same date upon which the cancellation of the Peerless policy took effect.
The accident occurred on January 16, 2015. All three insurance policies in question-the Peerless policy, the State National *986 policy and the Aspen policy-were introduced in evidence at the hearing on the coverage issue.
Policy Provisions in Excess Policy
The insuring agreement in Aspen's policy stated:
CLAUSE I. INSURING AGREEMENT
The Insurer will pay on the Insured's behalf ultimate net loss (resulting from bodily injury, property damage, personal injury, advertising injury, environmental damage, emergency response costs, clean-up costs or loss) in excess of, and not in contribution with, the underlying policies . Except as otherwise provided in this Policy, this Policy shall follow all provisions, exclusions, limitations, and all other terms and conditions of the followed policy . In the event of a conflict between this Policy and the followed policy , this Policy shall govern and control. Notwithstanding any other provision of this Policy, in no event shall this Policy grant broader coverage than that provided to the Insured under any of the underlying policies .
Terms appearing in boldface are defined in the policy. The term "followed policy" is defined as the policy identified in Item 8 of the Declarations and the term "underlying policies" is defined as the followed policy and all policies set forth in Item 9 of the Declarations. The Peerless policy appears only in Item 9 of the Declarations. It is not the followed policy, but it is an underlying policy.
The Aspen policy further provides:
CLAUSE IV. EXCLUSIONS
.....
Notwithstanding anything herein to the contrary, this Policy shall not apply to any coverage provided in any of the underlying policies to which this Policy would otherwise respond that has a sub-limit of less than $ 1,000,000.
CLAUSE V. CONDITIONS
.....
Cancellation
Except as set forth below, this Policy shall follow the cancellation terms of the followed policy ; provided that notwithstanding any other provision of this Policy, in the event of cancellation of the followed policy or of this Policy for non-payment of premium or material fraud or misrepresentation in the application, this Policy shall be void as of the inception date of this policy period and no coverage shall be provided by this Policy.
.....
Underlying Policies
It is a condition precedent to coverage under this Policy that the Insured maintain the underlying policies in full effect during this policy period except for any reduction or exhaustion of the limits thereof solely for payment of claims or expenses to which the underlying policies and this Policy apply. Failure of the Insured to maintain the underlying policies shall not invalidate this Policy, provided, however, in the event of such failure, the Insurer shall only be liable to the same extent as it would have been had the Insured maintained such underlying policies. [Underscoring added.]
Further, if any terms of the underlying policies are changed in any manner from those in effect as of the date of inception of this policy period, the Insured shall give the Insurer written notice as soon as practicable. Such changes made to the followed policy during this policy period are not automatically included in this Policy but may be incorporated herein only if and when: (i) the Insurer agrees to follow such changes by written endorsement issued *987 by the Insurer and made part of this Policy; and (ii) the Insured pays any additional premium when due as required by the Insurer to cover such changes.
This insurance is excess over, and shall not contribute with the underlying policies ....
As noted above, the Peerless policy was an underlying policy but was not the followed policy.
The underscored language in the first paragraph of the policy provisions on Underlying Policies is critical to the analysis of the issues presented on appeal. For simplicity, we refer to this language as the "failure to maintain" clause.
Other Evidence
At the hearing in October 2017, Water Works' owner, Mark Blanchard, testified that he thought Water Works had $ 5,000,000 of insurance coverage to go with the $ 1,000,000 that was paid by State National. His understanding was based on what his insurance agent had told him. Mr. Blanchard testified that he had only recently learned that Aspen was denying coverage for this accident. He said Water Works had not received anything in writing from Aspen advising them of this.
The affidavit of Lou Fey, Water Works' insurance broker, was introduced at the hearing without objection. Among other things, Mr. Fey stated that the Peerless policy "was never actually issued and was not in effect on the date of the collision at issue January 16, 2015, as it had been cancelled flat with no premium charged or paid.... The Peerless policy and the State National policy ... provided essentially identical automobile liability coverage in the amount of $ 1,000,000.00 with a single combined limit."
Aspen's vice president of underwriting, Arthur Erickson, testified at the hearing that Aspen did not agree to insure in excess of any policy issued by State National for the policy period in question; that Aspen's policy requires the insured to notify Aspen of any changes to the underlying policies, which Water Works did not do; and that the clause in Aspen's policy describing what would happen if the insured did not maintain an underlying policy was not applicable because the Peerless policy for 2015 was cancelled flat, as of the first day of the policy period, and thus was not implemented for the year 2015.
Mr. Erickson acknowledged that the excess policy does not define or differentiate between implementing and maintaining a policy and does not negate coverage if the insured fails to notify Aspen of a change in the underlying insurer.
Mr. Erickson testified that Aspen evaluates its underlying carriers on an annual basis by reviewing information about the terms and conditions of the proposed underlying coverage for the upcoming policy period and the premium to be charged for it, as well as information about the financial wherewithal and the claims handling capabilities of the underlying carrier, which can change over time.
Mr. Erickson acknowledged that Aspen had approved State National as an underlying carrier for other accounts "for quite some time," both before and after 2015. During his tenure with Aspen, which began in 2012, Mr. Erickson was not aware of any instances in which Aspen had rejected State National as an underlying insurer. He testified that Aspen approved State National as the underlying automobile liability carrier in the Water Works excess policy for 2016, the year following the year in which this accident occurred, and that the underwriting staff did not realize that the underlying auto policy for 2015 was with an insurer other than the insurer listed in the Aspen policy for that *988 year when they approved State National as the underlying carrier in 2016.
Mr. Erickson acknowledged that the policy limits of the Peerless and State National policies for 2015 were the same and that State National paid its policy limits to settle the personal injury and property damage claims arising from this accident and defended Water Works and McDonald until State National was dismissed from the lawsuits following the settlement.
Mr. Erickson did not review the State National policy for 2015 or compare its provisions to those of the Peerless policy after learning of the change in carriers, despite having access to a copy of the State National policy through Aspen's attorney, because "the proper channel for me to get it would be from the broker," and the broker did not provide him with a copy of it. Mr. Erickson confirmed that as of the hearing date, Aspen was "still denying coverage for a State National policy that we were never provided nor told about."
Trial Court Ruling
The trial court found that the Aspen policy clearly and unambiguously provided that the underlying policies must be maintained for Aspen's excess policy to be triggered. The court concluded that Aspen did not provide coverage for this accident because the State National policy was not listed in the schedule of underlying policies in Aspen's excess policy for 2015 and Aspen was not notified that Water Works had chosen State National over Peerless in 2015.
The trial court found inapplicable the "failure to maintain" clause, which states that the insured's failure to maintain an underlying policy does not invalidate the excess policy but limits Aspen's liability to the same extent as it would have been liable had the insured maintained the underlying policy. The basis for the court's conclusion that this clause did not apply was as follows: Water Works' retroactive cancellation of the Peerless policy for the year 2015 without paying a premium for that year meant that the Peerless policy "was never implemented.... This court deems that it is as if the Peerless policy never existed, and something that never existed cannot be maintained.... [B]ecause the Peerless policy was never purchased, it could not be maintained and Aspen's excess coverage policy is not triggered." In support of this distinction between implementing and maintaining an underlying insurance policy, the court quoted from the dissenting opinion in Futch v. Commercial Union Ins. Co. , 625 So.2d 1019 (La. 1993), discussed below.
Assignments of Error
Plaintiffs contend the trial court erred, both factually and legally, in finding that the Peerless policy listed in the schedule of underlying insurance in Aspen's policy was never "implemented" because it was not purchased, and therefore it could not be "maintained" for purposes of the "failure to maintain" clause. They note that the Aspen policy does not contain or define the term "implement," nor does it distinguish between implementing and maintaining an underlying policy. Plaintiffs assert the trial court erred in relying on the dissenting opinion rather than the majority opinion in Futch , supra . Because the State National policy had the same policy limits as the Peerless policy and those limits were paid in full, plaintiffs contend the trial court erred in finding that the underlying automobile liability coverage was not exhausted.
Additionally, plaintiffs seek to have the trial court's dismissal of their entire case reversed because Aspen was one of three defendants in the case and only Aspen was *989 the subject of the evidentiary hearing to determine insurance coverage.
Standard of Review
The trial court's factual findings relating to the insurance coverage issue are subject to the manifest error standard of review and may not be set aside on appeal unless they are clearly wrong. Yount v. Maisano , 627 So.2d 148, 152 (La. 1993) ; Sauer v. National Car Rental System, Inc. , 07-844 (La. App. 5 Cir. 4/15/08), 980 So.2d 898, 903, writ denied , 08-1235 (La. 9/19/08), 992 So.2d 935. Issues of law relating to insurance coverage are reviewed de novo, without deference to the trial court's legal conclusions. Power v. State Farm Fire and Cas. Co. , 15-796 (La. App. 5 Cir. 5/26/16), 193 So.3d 471, 473.
Law on Policy Interpretation
An insurance policy is a contract between the parties and should be construed by using the general rules of contract interpretation set forth in the Louisiana Civil Code. If the policy wording at issue is clear and it unambiguously expresses the parties' intent, courts must enforce the insurance contract as written and may not alter its terms under the guise of contractual interpretation. Green ex rel. Peterson v. Johnson , 14-0292 (La. 10/15/14), 149 So.3d 766, 776 ; Sandoz v. Bourgeois , 10-859 (La. App. 5 Cir. 4/12/11), 64 So.3d 322, 325, writ denied , 11-0973 (La. 6/17/11), 63 So.3d 1043.
Like any other contracting party, insurers are entitled to contractually limit coverage in any manner they desire so long as the limitations do not conflict with statutory provisions or public policy. Moreno v. Entergy Corporation , 17-182, 17-183 (La. 11/15/17), 233 So.3d 176, 182.
An insurance policy is to be construed as a whole and each provision must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. Green , 149 So.3d at 775.
The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself and should not be assumed. Common intent is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. When a contractual provision is clear and unambiguous and does not lead to absurd consequences, the letter of it should not be disregarded under the pretext of pursuing its spirit. Courts should not bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. Moreno , 233 So.3d at 181-182.
Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract in their common and usual meaning or significance. Id. at 182. The rules of contractual interpretation do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. Green , 149 So.3d at 776.
A contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Moreno , 233 So.3d at 182.
Analysis
The trial court's ruling that the automobile liability coverage underlying *990 Aspen's excess coverage was not exhausted is based on a combination of factual findings and legal conclusions. As noted above, we review the former under the manifest error standard of review and the latter de novo.
The parties do not dispute that Water Works did not comply with the policy provision in the excess policy requiring it to "maintain the underlying policies," defined in the policy as those set forth in Item 9 of the Declarations, "in full effect during this policy period" as a condition precedent to coverage. The dispute centers on whether or not the language immediately following that provision applies in this case, specifically:
Failure of the Insured to maintain the underlying policies shall not invalidate this Policy, provided, however, in the event of such failure, the Insurer shall only be liable to the same extent as it would have been had the Insured maintained such underlying policies.
The trial court found that the Peerless policy was never implemented for the year 2015, having been retroactively cancelled as of the first day of the policy period without any premium payment for that year. The court equated this with a finding that the Peerless policy "never existed," and stated, "something that never existed cannot be maintained." The term "maintain" is not defined in the Aspen policy. The court referenced Merriam-Webster's definition of the term "maintain" as meaning "to keep in an existing state; preserve from failure or decline." Based on those factual findings, the court determined that the "failure to maintain" clause in the excess policy did not apply and that the excess coverage was not triggered because the State National policy was not an underlying policy listed in Aspen's policy.
In support of the distinction between "implementing" and "maintaining" a policy, the trial court cited with approval the reasoning in the dissenting opinion in Futch v. Commercial Union Ins. Co. , supra . While we agree that there are some factual differences between that case and this case, the majority in Futch implicitly rejected the rationale of the dissenting justice, who took the position that there was no automobile liability coverage under an umbrella policy, notwithstanding a similar "failure to maintain" clause, because the insured never obtained any type of underlying automobile coverage. The majority found that the umbrella policy provided coverage for non-owned automobiles above the excess insurer's threshold of $ 500,000, despite the lack of underlying automobile coverage, stating:
Under Condition P [the "failure to maintain" clause], absence of the requisite underlying insurance limited coverage to the excess over $ 500,000 up to $ 1.5 million in recoverable damages. See Washam v. Chancellor , 507 So.2d 806 (La. 1987), and Thibodeaux v. Burton , 538 So.2d 1001 (La. 1989). Condition P also preserved the umbrella coverage if the underlying insurance was with an unnamed company or was nonexistent.
625 So.2d at 1021. (Bracketed material added.)
The cases mentioned by the trial court in which dictum in the Futch case was cited with disapproval involved an unrelated issue, that of whether a waiver of uninsured motorist coverage is valid if it is made after a policy's issuance.
Aspen notes that the policy at issue in Futch was an umbrella policy and that its policy is an excess policy, meaning that it "sits on top of, rather than supplementing, other policies," as Mr. Erickson testified. We do not find the distinction between an excess policy and an umbrella policy to be *991 relevant here because plaintiffs are not seeking coverage from Aspen below the $ 1,000,000 threshold for excess coverage.
In the Washam and Thibodeaux cases cited in the majority opinion in Futch , the insured violated a condition in an umbrella or excess insurance policy by reducing uninsured motorist coverage to an amount below the amount required by the excess policy. Each policy contained a "failure to maintain" clause similar to the clause at issue here. In each case, the Supreme Court found that the excess carrier could only be liable to the extent that it would have been liable if the insured had maintained the required amount of underlying coverage.
The trial court's rationale that the Peerless policy for 2015 was never implemented because the policy was cancelled retroactively to the first day of the policy period would result in the "failure to maintain" clause being inapplicable if the underlying policy is cancelled as of the first day of the policy period, but applicable if the underlying policy is in effect on the first day and is cancelled on any subsequent day during the policy period. There is no indication in the policy language that this is what the parties intended. See and compare Gabriel v. Mount Vernon Fire Ins. Co. , 2016 WL 7443959 (Conn. Super. Ct. 2016), affirmed , 186 Conn. App. 163, 199 A.3d 79 (11/20/18), in which the trial and appellate courts rejected a similar rationale concerning the meaning of the word "maintain" in a "failure to maintain" clause as being too narrow.
Based on the evidence in this record, we conclude that the trial court was clearly wrong in finding that the Peerless policy was "never implemented." The Peerless policy was in effect for all of 2014, in accordance with the requirements of the Aspen policy, and was renewed by Peerless before it was cancelled by the insured, Water Works, when the State National policy was obtained. The 2015 Peerless policy bears the same policy number as the 2014 policy. The Peerless policy was in effect for approximately two weeks in 2015 until it was cancelled on January 15, 2015. The fact that Water Works cancelled the policy retroactively to January 1, 2015 does not mean that the policy "never existed" in 2015, as found by the trial court. Water Works implemented the policy in 2014 but failed to maintain it in 2015. Under these circumstances, and in the absence of any other policy provisions negating coverage, we find that the "failure to maintain" clause applies in this case.
As noted above, the Aspen policy states that it does not apply to "any coverage provided in any of the underlying policies to which this Policy would otherwise respond that has a sub-limit of less than $ 1,000,000." (Clause IV, Exclusions.) There is no evidence of any inadequate sub-limits here. The Aspen policy further states that it "shall be void as of the inception date of this policy period and no coverage shall be provided by this Policy ... in the event of cancellation of the followed policy or of this Policy for non-payment of premium or material fraud or misrepresentation in the application[.]" (Clause V, Conditions.) This provision does not apply because none of the specified events occurred, and the Peerless policy was an underlying policy but was not the "followed policy."
Construing the Aspen policy as a whole, we do not find any factual or legal basis for disregarding the policy provision stating that the insured's failure to maintain a policy listed in the schedule of underlying policies does not invalidate the policy but limits Aspen's liability to the same extent as it would have been liable had the insured maintained the underlying policy.
*992 See and compare Watts v. Aetna Cas. and Sur. Co. , 574 So.2d 364 (La. App. 1st Cir. 1990), writ denied , 568 So.2d 1089 (La. 1990). The excess policy there required the insured to maintain underlying coverage with either split limits ($ 250,000 per person/$ 500,000 per occurrence) or with a combined single limit of $ 300,000. The amount of the required underlying coverage had increased over the years. From the inception of the excess policy, the insured never had the required amount of underlying coverage. The excess policy contained a "failure to maintain" clause similar to the clause at issue here.
The trial court found that the policy provisions concerning the required amount of underlying coverage were ambiguous and held that the excess policy dropped down to provide coverage below the minimum underlying coverage limits. Based on a reading of the entire policy, the appellate court reversed, finding that Aetna's coverage did not drop down because its liability under the excess policy was not dependent on whether the insured met the minimum coverage limits. In interpreting the "failure to maintain" clause, the court stated that the insured's "failure to comply with the [minimum underlying coverage] requirements ... does not invalidate the Aetna policy. ... Aetna's liability under the policy will be the same whether or not the primary coverage is properly maintained by the insured." 574 So.2d at 371. (Bracketed material added.)
Plaintiffs here are not asserting a claim for drop down coverage. They are seeking to hold Aspen liable for excess coverage to the same extent that it would have been liable had the Peerless policy been in effect at the time of the accident. The Aspen policy recognizes that the insured may not maintain the underlying policies as they existed at the inception of the excess policy, despite the fact that the insured is required to do so as a condition precedent to coverage, and directs that in such circumstances, Aspen "shall only be liable to the same extent as it would have been had the Insured maintained such underlying policies." The interpretation of the policy advanced by Aspen and accepted by the trial court renders this policy provision ineffective, contrary to the rules of policy interpretation discussed above.
In two cases cited by Aspen, the courts' interpretation of the "failure to maintain" clause in the respective umbrella policies appears to have rendered it ineffective as well: Evins v. Louisiana Farm Bureau Mut. Ins. Co. , 04-0282 (La. App. 1st Cir. 2/11/05), 907 So.2d 733, and R. W. Beck & Assoc. v. City and Borough of Sitka , 27 F.3d 1475 (9th Cir. 1994) (applying Alaska law). Those cases are not controlling authority in this circuit and appear to be contrary to the reasoning of the Louisiana Supreme Court in Futch v. Commercial Union Ins. Co. , discussed above. Accordingly, we decline to follow them.
Each case turns on its own facts and policy provisions. Many of the cases in which courts have interpreted a "failure to maintain" clause similar to the clause at issue here have involved the insured's failure to maintain the required amount of underlying coverage. While that is not the situation here, the "failure to maintain" clause in Aspen's policy is not limited to a failure to maintain the required amount of underlying coverage but refers to the insured's failure to maintain "the underlying policies" listed in Item 9 of the Declarations. Although Water Works clearly should have notified Aspen of its intention to change the underlying carrier, Aspen's policy does not negate coverage for failure to give notice. Under these circumstances, the change in underlying carriers did not absolve Aspen of potential liability for this accident under the terms of its policy.
*993 It is undisputed that the State National policy for 2015 covered the vehicle involved in this accident and provided the same amount of underlying coverage required by Aspen's excess policy as the Peerless policy provided. State National was solvent, provided its insured with a defense and paid its policy limits in settlement of the claims of plaintiffs and the other guest passenger in Davis's vehicle. Aspen approved State National as the underlying carrier in Water Works' excess policy for 2016 and approved State National as an underlying carrier for other insureds both before and after 2015. Based on the evidence in this record, it appears that Aspen is in the same position it bargained for as an excess carrier and would have been in if Peerless had remained the underlying carrier in 2015.
Conclusion
We conclude that the policy limits underlying Aspen's automobile liability coverage were exhausted and that Aspen should not have been dismissed from these lawsuits. If State National's underlying coverage for this accident is less favorable to Aspen than Peerless's coverage would have been, Aspen's liability, if any, will be limited to what it would have been under the Peerless policy.
Decree
The trial court judgment is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED

State National paid $ 258,617 to Davis, $ 700,000 to Ellis, $ 32,500 to the other guest passenger and $ 8,883 for property damage.

Based on the evidence presented at the hearing, it appears that a "flat" cancellation is a cancellation that coincides with the expiration date of an existing policy.